NITRAM, INC., Plaintiff,

v.

INDUSTRIAL RISK INSURERS et al., Defendants/Third Party Plaintiffs,

v.

MAN GUTEHOFFNUNGSHUTTE GmbH, et al., Third Party Defendants.

No. 85–1770–CIV–T–17.

United States District Court, M.D. Florida, Tampa Division.

March 23, 1994.

Charles W. Pittman, Macfarlane, Ausley, Ferguson & McMullen, Tampa, FL, for Nitram.

R. Dennis Withers, Robins, Kaplan, Miller & Ciresi, Atlanta, GA, for Industrial Risk Insu.

John L. O'Donnell, Jr., Dewolf, Ward, O'Donnell & Hoofman, P.A., Orlando, FL, for ISI, American Home Assur., Employer's Cas., Applegate Indus., J.W. Runge & Compan, M.A.N. Maschinenfabr, Barnard & Burk Group, Inc., Employers Ins. of Wausau and Barnard & Burk Engi.

Mark Edwin Grantham, Holland & Knight, Tampa, FL, for M.A.N. Gutehoffnungs and American M.A.N. Corp.

### ORDER ON MOTION TO VACATE AND MOTION TO CONFIRM

KOVACHEVICH, District Judge.

This cause is before the Court on Barnard and Burk Engineers & Constructors, Inc.'s, ("BBEC"), as well as Barnard and Burk Group, Inc. ("Barnard and Burk"), ISI, Nitram, Inc., ("Nitram"), and Industrial Risk Insurers ("IRI"), (herein collectively "Respondents"), Motion to Vacate Arbitrators' Award (Docket # 558) filed on August 6, 1993; response filed thereto (Docket # 564 & 569) on August 18, 1993; Motion to vacate the Arbitrator's Costs Award (Docket # 572) filed October 13, 1993; response filed thereto on October 29, 1993 (Docket # 580); and

MAN GUTEHOFFNUNGSHUTTE GmbH's (herein MAN GHH) Petition to Confirm Final Arbitral Awards (Docket # 568), filed on September 23, 1993.

## FACTUAL BACKGROUND

Arbitration was compelled between MAN GHH and Respondents pursuant to an arbitration provision in the parties' subcontract agreement. The parties arbitrated their claims before a three member panel in a consolidated arbitration. The claim arose out of the supply, by MAN GHH, of a tail gas expander for a nitric acid plant operated in Tampa, Florida by Nitram.

The facts as set out in the Arbitrator's Award are as follows: Respondents were retained by Nitram Inc., as project engineers & contractors, to assist in the modification of Nitram's nitric acid plant. Part of the work performed by Respondents was the installation of a tail gas expander, the purpose of which was to generate energy from waste gas. MAN GHH delivered the expander. The Respondents were responsible for the piping required to put the expander into service. On January 16, 1985, during start-up procedures, moving and stationary components of the expander came in contact with each other. This caused a "wreck" of the machine, deforming its rotor, scarring its stator casing and destroying seals.

Parts of the expander were returned to Germany for repair and the piping was modified. In March of 1985, the expander, again suffered a second wreck. The machine was subsequently rebuilt and after further piping modifications, it ran successfully.

Respondents, in addition to other allegations, primarily alleged that MAN GHH breached its contract and was negligent. Respondents also argued that the machine failed to achieve the performance criteria required of it. MAN GHH argued that it delivered a machine as required by its contract with the Respondents and that the performance requirements were met.

The main issues before the Arbitration Panel were:

1. What caused the two "wrecks."

2. Was MAN GHH in breach of contract and negligent.

3. To what, if any money, would either party be entitled.

4. Who would be responsible for costs of the arbitration.

After hearing expert testimony on both sides, the Arbitration Panel concluded that both the "wrecks" were caused by the piping and not the expander. Additionally, the Panel found that MAN GHH was not negligent, nor in breach of contract.

Further, the Panel awarded MAN GHH 218,387.96 in Deutschemark which was converted into a total of $80,658.56. U.S. dollars. The Panel ordered Respondents to pay MAN GHH the sum awarded and held that Respondent was not entitled to any money. The Panel also held that MAN GHH should receive only the costs of arbitration, excluding attorneys fees, the filing and postponement fees it paid to the American Arbitration Association (herein "AAA"), the costs of interpreters and the costs of Mr. Hansen, and mediation costs. The Panel awarded $299,-772.05. in costs to MAN GHH to be paid by Respondents and the Insurers.

Subsequent to the Arbitration Panel's Award, Respondents filed their Motions to Vacate and MAN GHH filed a Motion To Confirm the Arbitral Award.

## ISSUES

Respondents argue that the Arbitral Award should be vacated on the following grounds:

1. The use of expert witness, Hansen, who was originally retained by Respondents, and admission of the "last minute report," denied them a fundamentally fair hearing, and constituted substantial prejudice to Respondent's rights and violated 9 U.S.C. § 10(a)(1) and (a)(3);

2. The Panel failed to conform the hearing to the arbitration agreement, made and amended by the parties through the specific agreement, in violation of the AAA's Panel's Orders concerning ex parte communications with Hansen and deadlines for disclosure of expert reports and thereby denied them a fundamentally fair hearing and prejudiced

the rights of Respondents in violation of 9 U.S.C. § 10(a)(3) and (a)(4);

3. Admission of the Hansen evidence violated public policy;

4. The Arbitration Award was irrational, arbitrary, and capricious with no basis in evidence and in contradiction of undisputed facts, failed to provide a reasoned award on principle issues as agreed by the parties, and failed to determine the issues submitted contrary to 9 U.S.C. § 10(a)(4).

Additionally, Respondents argue in their Motion to Vacate the Arbitrators' Costs Award that the Panel's cost award is arbitrary and capricious.

## STANDARD OF REVIEW

Respondents base their Motion to Vacate the Arbitration Award on 9 U.S.C. § 10(a)(1), (3) and (4). The Statute reads in pertinent part:

(a) In any of the following cases the United States court in and for the district wherein the award was made may make

an order vacating the award upon the application of any party to the arbitration—

(1) Where the award was procured by corruption, fraud, or undue means ...

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

■ Although District Courts have discretion to vacate arbitration awards, this authority is not without limits. Great deference is afforded to these types of awards. *O.R. Securities, Inc. v. Professional Planning Association,* 857 F.2d 742, 746 (11th Cir.1988),

citing *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953).

## OPINION

■ 1. *Whether Hansen's testimony unfairly prejudiced Respondents' case* —Respondents state that they originally retained Hansen as an expert. Respondents therefore, argue that they never consented to counsel for MAN GHH contacting Hansen nor their use of his expert testimony in their case. Further, Respondents argue that because of Hansen's history of "side-switching," the Panel, should not have called nor allowed Hansen to testify, as this unfairly prejudiced their case.

The issue over whether Hansen should have been allowed to testify was vigorously debated by the parties. The Arbitration Panel, over Respondents contentions, decided to call Hansen as their own witness. The Panel found that Hansen's testimony was relevant to the issues in the case and indeed, the Panel relied on Hansen's testimony, along with the other expert testimony, in making its ruling. Clearly, Hansen's testimony was damaging to Respondent's case.

■ Respondents are in effect, asking this Court to review the Arbitrator's Award *de novo.* The level of scrutiny given to an Arbitrator's award is not that intrusive and moreover, because such awards are given greater deference, this Court shall not make such a review.

■ It is well settled that Federal courts give great deference to an arbitrator's decision to control the order, procedure and presentation of evidence. While it is true that Hansen testified that he believed the piping caused the machine failure and that this may have been a change from his original position, this Court finds that Respondents were not unduly prejudiced by this testimony. The Panel's written "Hansen Ruling" was published on February 15, 1993 and Hansen testified on March 26, and 27, 1993. There was opportunity for cross examination, and, in fact, Respondents conducted cross examination. Because Respondents had over one month to prepare for Hansen's appearance and because there was ample time for cross

examination, this Court finds that Panel's decision to call Hansen as their own witness and allow his testimony was not unreasonable. Moreover, because Hansen's testimony was not the only evidence considered by the Panel, it cannot be considered so materially prejudicial as to move this Court to grant the Motion to Vacate.

■ 2. *Whether Admission of the evidence violated the rules of the Arbitration* — Respondents argue that the admission of Hansen's testimony, on the report which pointed to the piping as the cause of the wrecks, was in violation of a prehearing order that all expert reports and significant documents be exchanged before October 31, 1992. Respondents allege that the report was not provided to them until January 8, 1993, the Friday before the hearings began. Additionally, the Respondents argue that admission of this evidence was unfairly prejudicial to their case.

■ The fact that the report, which indicated the piping as the cause of the "wreck," was given to Respondents only days before the commencement of the arbitration is irrelevant because the report was first given to Respondents on January 8, 1992, and Hansen did not testify that this report was the basis for his new opinion until March 26, and 27. Again, Respondents had ample opportunity to prepare for and rebut such testimony. The record reflects that there was cross examination and, therefore, opportunity for impeachment. This would have been an effective method for Respondents to use to discredit Hansen's damaging testimony. Further, Respondents called their own experts which the Panel heard and carefully weighed. Respondents only "muddy" the waters when they assert further, that this report was hearsay. Pursuant to the AAA's Arbitration Rules, arbitrators are not bound by traditional rules of evidence and possess the authority to receive evidence beyond the confines of such rules.

The admission of the alleged "last minute" report by the Panel over Respondent's objection, did not rise to the level of "misbehavior" pursuant to § 10(a)(3) as argued by Respondents. Nor did the Panel's admission of the report constitute a departure from their authority under the Federal Arbitration rules.

■ 3. *Whether the Panel's award or Hansen's testimony is violative of public policy* —Respondents argue that an arbitration award should be vacated when it is contrary to public policy, citing *Delta Airlines, Inc. v. Airline Pilots Ass'n,* 861 F.2d 665 (11th Cir.1988), *cert. denied,* 493 U.S. 871, 110 S.Ct. 201, 107 L.Ed.2d 154 (1989).

It is well settled that a court will only vacate an arbitration if the award is violative of some explicit public policy. However, this "policy" must be "well defined, dominant, and be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *United Paperworks Int'l Union v. Misco, Inc.,* 484 U.S. 29, 43, 108 S.Ct. 364, 373, 98 L.Ed.2d 286 (1987).

Respondents fail to give adequate explanation as to precisely what "explicit" public policy was violated by Hansen's testimony or what policy will be violated by the Panel's award. Therefore, this Court finds that the public policy exception is inapplicable here because this Court fails to see what public policy will be offended by the award.

■ 4. *Whether the Arbitration Award was improper* —Respondents argue that the Arbitration Award had no basis in evidence and was irrational, arbitrary, and capricious.

■ An arbitration award may be vacated if it is arbitrary and capricious or if enforcement of the award would be contrary to public policy. *Brown v. Rauscher Pierce Refsnes, Inc.,* 994 F.2d 775 (11th Cir.1993). However, "the onus is on the party requesting the vacatur to refute ... every rational basis upon which the arbitrator could have relied." *Robbins v. Day,* 954 F.2d 679, 684 (11th Cir.1992).

■ Awards should be vacated as arbitrary and capricious on two grounds. First, if the award exhibits a wholesale departure from the law. *Ainsworth v. Skurnick,* 960 F.2d 939, 941 (1992). Or, second, if the award is not grounded in the contract which provides for the arbitration. *U.S. Postal Service v. National Association of*

*Letter Carriers, AFL–CIO,* 847 F.2d 775, 778 (1988). The Respondents are supported by neither ground. An Award is arbitrary and capricious only if a legal ground for the arbitrators decision cannot be inferred from the facts of the case. *Raiford v. Merrill Lynch, Pierce, et al.,* 903 F.2d 1410, 1413 (1990). Moreover, an award may be vacated as arbitrary and capricious if the reasoning is so palpably faulty that no judge, or group of judges, could ever conceivably have made such a ruling. *Safeway Stores v. American Bakery and Confectionery Workers, Local 111,* 390 F.2d 79, 82 (5th Cir.1968). No such ground exists here.

Essentially, for this Court to vacate an arbitrator's decision, it must find that there is no basis for the Panel's decision. This Court finds that the Panel's award was not arbitrary and capricious, nor violative of any public policy. The Panel sufficiently set out the basis for its decision in its sixteen (16) page statement regarding the award. The decision was not so palpably faulty that no judge could have arrived at the same ruling. This Court can infer grounds for the Panel's award from the facts of the case. Furthermore, an arbitrator need not state the reasons for its award. *Robbins v. Day,* 954 F.2d 679, 684 (11th Cir.1992).

This Court further, finds that the Panel's award of costs was not arbitrary or capricious. The arbitrators gave a very thoughtful and careful explanation of why they awarded the particular costs in this case. Further, Respondents Motion to Vacate the Arbitrators' Conversion Rate Award was considered along with the general Motion to Vacate the Arbitrators' Award.

Respondents specifically argue that the costs awarded with reference to the expert testimony, the daily transcripts, and the 50/50 cost split of the TUV report were violative of Florida law and published guidelines.

Respondents challenge the costs awarded pursuant to the testimony of a one Dr. Naumann and Peterson Consulting. In reference to Dr. Naumann, the Panel reduced the amount requested by the Claimants by 40% and awarded costs after hearing assertions on both sides and reviewing the quality of the witness's expertise and testimony.

With respect to Peterson Consulting, again the Panel gave their award careful analysis. The Panel reduced the Claimant's request by 20%.

Respondents also challenge the award for costs of the daily transcripts. The Panel pointed out that both parties used the daily transcripts and that arbitrators have the discretion to tax the cost of such transcripts when they serve a useful purpose.

Respondents also argue the 50/50 split of the TUV report was arbitrary and capricious. The TUV report was introduced and considered by the Panel, however, because of the circumstances of its introduction, the Panel reduced the amount claimed by 50%.

Arbitrators may grant remedy or award that it deems just and equitable and will not be reviewed *de novo* by the this Court. Judicial review of arbitration awards is extremely narrow. *O'Rear v. American Family Life Assurance Company of Columbus, Inc., et al.,* 817 F.Supp. 113, 115 (M.D.Fla.1993).

Notwithstanding any other arguments made by Respondents not mentioned specifically in this order, the Panel's award and award for costs were not arbitrary and capricious nor were they procured by corruption, fraud or undue means pursuant to § 10(a)(1). Respondents have not established that the arbitrators were responsible for any misconduct or that their behavior prejudiced the Respondents. Nor did the arbitrators exceed the power executed them on any matter in this case. Accordingly, it is

**ORDERED** that Respondent's Motion to Vacate the Arbitrator's Award, be **DENIED; ORDERED** that Respondent's Motion to Vacate the Costs Award be **DENIED;** and that MAN GHH's Motion to Confirm the Award be **GRANTED.** The Clerk be **directed** to enter judgment accordingly.

**DONE and ORDERED.**