215 N.J. Super. 190 (1987)
521 A.2d 867
CITIZENS STATE BANK OF NEW JERSEY, A NEW JERSEY STATE BANK, PLAINTIFF-APPELLANT,
v.
GERALD J. LIBERTELLI, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 1, 1986.
Decided February 9, 1987.
*192 Before Judges J.H. COLEMAN, R.S. COHEN and GRUCCIO.
Peter Aron, admitted pro hac vice, argued the cause for appellant (Magee & Graham, attorneys; Granville D. Magee, on the brief, Olwine, Connelly, Chase, O'Donnell & Weyher, attorneys, Peter Aron, on the brief).
George B. Henkel argued the cause for respondent (Soriano, Henkel, Gaydos, Marinello, Matthews & Biehl, attorneys; George B. Henkel, on the brief).
The opinion of the court was delivered by R.S. COHEN, J.A.D.
Citizens Bank of New Jersey (Citizens) and Gerald Libertelli entered into a five-year employment contract in July 1983, under which Libertelli was to serve as the bank's president, chairman of the board and chief executive officer. In November 1985, the board of directors terminated Libertelli's employment with the bank. Citizens then brought this action for a declaration of the rights and obligations of the bank and Libertelli under the employment contract. Libertelli counterclaimed for breach of contract, fraud and libel. The trial court denied Citizens' motion for summary judgment on its claims and for dismissal of Libertelli's. We granted leave to appeal and now reverse the denial of Citizens' motion for summary judgment with respect to Libertelli's termination, but affirm the denial of Citizens' motion to dismiss Libertelli's claim for libel.
Citizens argues that it was entitled to terminate Libertelli at its pleasure, pursuant to N.J.S.A. 17:9A-112. This statute, which is a part of the Banking Act of 1948, provides:
Subject to removal by the Board of Directors at its pleasure, or by the Commissioner pursuant to section 249, each officer shall hold office from the time of his election or appointment until the first meeting of the board of directors, following the next annual meeting of stockholders, at which officers are elected or appointed.
*193 This provision applies to all New Jersey banks. N.J.S.A. 17:9A-2. It has never been interpreted or applied in any reported New Jersey decision, and the legislative history of the Banking Act provides no insight into its meaning. However, we may refer to the National Bank Act, which dates from the Civil War and similarly permits the board of directors of a nationally chartered bank to appoint a president, cashier, and other officers and to "dismiss such officers or any of them at pleasure, and appoint others to fill their places." 12 U.S.C. § 24, Fifth. Also, the Federal Reserve Act of 1913 permits the board of directors of a Federal Reserve Bank to appoint officers and employees "and to dismiss at pleasure such officers and employees." 12 U.S.C. § 341, Fifth.
Cases applying these federal statutes have uniformly held that the phrase "at pleasure" authorizes the board of directors to dismiss officers at any time, for any reason, and without liability for breach of contract or wrongful discharge. McGeehan v. Bank of New Hampshire Nat. Ass'n., 123 N.H. 83, 455 A.2d 1054 (N.H. 1983); Kemper v. First Nat. Bank in Newton, 94 Ill. App.3d 169, 49 Ill.Dec. 799, 418 N.E.2d 819 (Ill. 1981); Armano v. Federal Reserve Bank of Boston, 468 F. Supp. 674 (D.Mass. 1979); Van Slyke v. Metropolitan Nat. Bank, 155 Minn. 319, 193 N.W. 470 (Minn. 1923); Rankin v. Tygard, 198 F. 795 (8 Cir.1912). Provisions in bank officers' contracts for a specified term of employment are void as against the public policy embodied in the federal statute. McGeehan, supra, 455 A.2d at 1055.
The New Jersey Banking Act of 1948 was enacted against the background of the federal statutes and their settled interpretation. Like the federal legislation, N.J.S.A. 17:9A-112 authorizes the board of directors of a New Jersey bank to terminate its officers at its pleasure.[1] The bank contends it had *194 ample justification to terminate Libertelli, while Libertelli asserts that his termination was unfounded. We need not consider these contentions. The statute plainly authorizes the board to terminate Libertelli without cause and without incurring liability for breach of contract or wrongful discharge. The statutory authority is severely limited if its exercise can create liability for damages. If the Legislature meant to preserve the removed officer's contract rights, it would have used language unlike the federal statutes' to do so. It did just that for officers of non-bank corporations in N.J.S.A. 14A:6-16(1), which authorizes the board of directors to remove any appointed officer "with or without cause," but provides that removal without cause "shall be without prejudice to [the officer's] contract rights, if any."
Libertelli makes three other arguments. The first is that his firing violates the covenant of good faith and fair dealing implicit in his employment contract. See Palisades Properties, Inc. v. Brunetti, 44 N.J. 117, 130 (1965); Einhorn v. Ceran Corp., 177 N.J. Super. 442, 449 (Ch.Div. 1980) aff'd o.b. 185 N.J. Super. 8 (App.Div. 1982). We disagree. The statute, in its express policy favoring a bank's freedom to discharge its officers, converts Libertelli's employment contract into a hiring at will. New Jersey courts have not invoked the implied covenant of good faith and fair dealing to restrict the authority of employers to fire at-will employees. See Woolley v. Hoffman La Roche, Inc., 99 N.J. 284, 290-292 (1985). Cf. Pugh v. See's Candies, Inc., 116 Cal. App.3d 311, 171 Cal. Rptr. 917 (Ct.App. 1981). The covenant should not be applied to revive a contractual term of employment invalidated by a legislatively-imposed provision for free terminability.
Libertelli also alleges that he was fired because he insisted on following sound and lawful banking practices and would not go along with the self-dealing improprieties of board members. *195 He argues that under Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58, 72 (1980), his termination was in violation of public policy. In that case, the Supreme Court established that an employer's right to fire an at-will employee carries with it a correlative duty not to fire one who declines to perform an act that would require violation of a clear mandate of public policy.
Legislation is the primary source of public policy. Pierce, supra, 84 N.J. at 72. Thus, an employee is protected from termination in retaliation for refusal to commit an act which would violate a statute. Tameny v. Atlantic Richfield Co., 27 Cal.3d 167, 610 P.2d 1330, 164 Cal. Rptr. 839 (Sup.Ct. 1980) (discharge for refusal to participate in an illegal scheme to fix retail prices); O'Sullivan v. Mallon, 160 N.J. Super. 416 (Law Div. 1978). Similarly, an employee may not be fired for assertion of a right protected by legislation. Perks v. Firestone Tire & Rubber Co., 611 F.2d 1363 (3 Cir.1979) (termination for exercise of statutory right to refuse lie detector test); State v. Community Distributors, Inc., 64 N.J. 479 (1974) (upholding statute prohibiting lie detector test as a condition of employment or continued employment); Hentzel v. Singer, 138 Cal. App.3d 290, 188 Cal. Rptr. 159 (Ct.App. 1982) (termination for excercise of statutory right to refuse lie detector test); State v. tions). Also, under the common law and statute, discharge in retaliation for filing a workers' compensation claim is actionable. Lally v. Copygraphics, 85 N.J. 668 (1981). N.J.S.A. 34:15-39.1. Termination is unlawful if invidiously discriminatory. N.J.S.A. 10:5-12.
It is the policy of the New Jersey Legislature to regulate virtually every activity of banking institutions. N.J.S.A. 17:1 et seq. Part of the regulatory pattern is to supervise the actions of members of boards of directors. See e.g., N.J.S.A. 17:9A-72, 73 and 75, prohibiting certain loans to directors and their enterprises, and providing criminal penalties and personal liabilities for violations. The Commissioner of Banking, after procedural *196 requirements are met, can discharge board members who persist in self-dealing improprieties. N.J.S.A. 17:9A-249.
The policy of the Banking Act to regulate the conduct of banks and their board members should not be used to undermine the clear provision of that same statute permitting termination of officers at will. Termination of a bank officer for protesting directors' improprieties is not barred by public policy arising from a regulatory scheme which specifically permits the termination and contains effective other means of dealing with those improprieties.
It follows from our analysis of the statute that Libertelli has no cause of action for fraud. Libertelli alleges that the bank "made certain representations all of which are set forth in the contract." Because the term-of-employment provision of a bank officer's contract is unenforceable, we hold that the bank cannot be held to that term through an action for fraud. This result is necessary to make effective the banks' authority to terminate officers at pleasure and without fear of liability. If prior promises of a fixed employment term were sufficient to create a cause of action for fraud, the statute would be rendered ineffective. In addition, we question the reasonableness of reliance by an experienced bank officer on a contract term invalidated by law. Contra, see Rohde v. First Deposit Nat. Bank, 127 N.H. 107, 497 A.2d 1214 (Sup.Ct.N.H. 1985).
The question remains whether Libertelli states a claim for libel. He asserts that Citizens submitted a copy of its complaint to the local newspaper, which published it almost verbatim the day it was filed. Libertelli alleges that the contents of the complaint were false; that they were, in the alternative, maliciously or negligently made, and that as a result his reputation and professional future have been injured. The bank admits that the unfiled complaint was given to the newspaper in contemplation of its filing, but asserts that it was *197 thus uttered in connection with judicial proceedings, and is therefore a privileged communication.
We have observed:
It is well established that statements, written or oral, made by judges, attorneys, witnesses, parties or jurors in the course of judicial proceedings, which have some relation thereto, are absolutely privileged from slander or defamation actions, even if the statements are made with malice. (citations omitted.) Clearly, pleadings, such as the complaint filed herein, are regarded as part of the judicial proceedings.
Lone v. Brown, 199 N.J. Super. 420 (App.Div.) cert. granted 102 N.J. 336 (1985); Wendy's of So. Jersey v. Blanchard Manage. Corp., 170 N.J. Super. 491, 494-495 (App.Div. 1979). This immunity rests upon the idea "that conduct which otherwise would be actionable is to escape liability because the defendant is acting in furtherance of some interest of social importance, which is entitled to protection even at the expense of uncompensated harm to plaintiff's reputation." Prosser and Keeton on Torts, 5th Ed. § 114. The New Jersey Supreme Court has added:
* * * the potential harm which may result from the absolute privilege is somewhat mitigated by the formal requirements such as notice and hearing, the comprehensive control exercised by the trial judge whose action is reviewable on appeal, and the availability of retarding influences such as false swearing and perjury prosecutions; * * *
Rainier's Dairies v. Raritan Valley Farms, Inc., 19 N.J. 552, 562 (1955). See Twelker v. Shannon & Wilson, Inc., 88 Wash. 2d 473, 564 P.2d 1131, 1133-1134 (Sup.Ct. 1977).
The "tough calls"[2] in this area become specially difficult where the uttering of defamatory material is no more than extra-judicial distribution of papers filed in court. The difficulty arises out of the fact that the papers are public documents and could have been obtained without the intervention of plaintiff. They are privileged if filing in court is their only publication, even if they are filed maliciously for the sole purpose of being available for republication by the press. See Eldredge, *198 The Law of Defamation, § 73, at 356 n. 60 (1978); cf. Bradley v. Hartford Acc. & Indem. Co., 30 Cal. App.3d 818, 106 Cal. Rptr. 718 (Ct.App. 1973).
Publications which take place outside of the judicial proceeding are not related to the parties' legitimate purposes in litigating or to the societal goal of enabling litigants to freely express themselves in court without fear of suit for defamation. Devlin v. Greiner, 147 N.J. Super. 446, 455 (Law Div. 1977). Such publications are made beyond the controls and inhibitions inherent in the judicial process.
In order to qualify for the absolute privilege accorded to judicial proceedings, a defamatory statement must be made in the course of the proceeding. That includes communications in preparation for litigation, Restatement, Torts 2d, § 588 at 259 (1977), such as conferences with counsel. See Middlesex Concrete, etc. v. Carteret Industrial Ass'n., 68 N.J. Super. 85, 92 (App.Div. 1961). It does not include a statement given to investigating police implicating another in criminal activity.[3] Immunity does not extend to statements published outside of a judicial proceeding to persons not connected with it. Eldredge, supra, § 73, at 355.
If publication outside the judicial proceeding were immune from suit, "a person need only file false and defamatory statements as judicial pleadings and then proceed to republish the defamation at will under the cloak of immunity." Asay v. Hallmark Cards, 594 F.2d 692, 698 (8 Cir.1979). Such a prospect led the New York Court of Appeals to hold in Williams v. Williams, 23 N.Y.2d 592, 298 N.Y.S.2d 473, 246 *199 N.E.2d 333 (Ct.App. 1969), that a complaint, charging defendant with procuring the filing of a defamatory complaint and distributing copies in the business community, stated a cause of action. The distribution was held not to be immunized by a statute barring suit against one who publishes a fair and true report of any judicial proceeding.[4] In other cases, criminal defense counsel who made statements to the press concerning their clients' cases have been held not to be protected. Kennedy v. Cannon, 229 Md. 92, 182 A.2d 54 (Ct.App. 1962); Barto v. Felix, 250 Pa.Super. 262, 378 A.2d 927 (Super.Ct. 1977). In the latter case, counsel merely repeated what was contained in the brief already filed with the court.
Distribution of court-filed documents to the press or other interested persons merely republishes material otherwise absolutely privileged. However, such distribution is not protected because it is foreign to the purposes of the privilege and serves only the interest of the distributor in getting one side of the story out first or most vividly. The argument is made that litigants ought to be able to furnish information of record to the press and public. See Barto v. Felix, supra, 378 A.2d at 935 (Spaeth, J., dissenting). And so they can. But they cannot claim an absolute immunity created to safeguard the judicial process on the thesis that relations with the press and public are a part of it. Distribution to the press and public of pleadings and other documents may be a tactic chosen by litigators, but it is not immunized as a part of the judicial process.
Affirmed in part, reversed in part, and remanded for further proceedings in the Law Division.
NOTES
[1] The parties have not explored the impact on the five-year contract of Section 112's requirement of annual appointment or election of officers.
[2] Sanford, Libel and Privacy, § 10.4.2.2, at 397 (1985).
[3] Such a statement is qualifiedly privileged, however, as a communication from a person with an interest or duty to a person with a corresponding interest or duty. Dijkstra v. Westerink, 168 N.J. Super. 128, 134-135 (App.Div.), certif. den. 81 N.J. 329 (1979); see also Coleman v. Newark Morning Ledger Co., 29 N.J. 357, 375 (1959).
[4] The outcome of the present case is completely independent of the liabilities and immunities of the press, see also Schiavone Const. Co. v. Time, Inc., 735 F.2d 94 (3 Cir.1984), and of persons having a duty to act or report. Burke v. Deiner, 97 N.J. 465 (1984); Dijkstra v. Westerink, 168 N.J. Super. 128 (App.Div.), cert. den. 81 N.J. 329 (1979).