Sandra BENDER, Plaintiff,

v.

SMITH BARNEY, HARRIS UPHAM & CO., INC., Richard Carlin, John Maine and Ronald Reisman, Defendants.

Civ. A. No. 91–5493 (JBS).

United States District Court, New Jersey.

Oct. 27, 1994.

Sandra Bender, Cherry Hill, NJ, Plaintiff pro se.

Matthew Farley, Thomas A. Roberts, Shanley & Fisher, P.C., Morristown, NJ and David S. Friedman, Office of the General Counsel, Smith Barney Shearson, Inc., New York City, for Defendants.

*OPINION*

SIMANDLE, District Judge:

This is an employment discrimination action in which plaintiff, Sandra Bender, alleges, *inter alia,* that she was discriminated against on the basis of sex and religion when she was terminated from her position as broker at Smith, Barney. On March 20, 1992, the Honorable William G. Bassler, U.S.D.J., filed an Opinion in which he determined that petitioner was contractually obligated to arbitrate her employment dispute and entered an Order compelling plaintiff to arbitrate all of her claims pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* 789 F.Supp. 155. The matter was stayed pending arbitration, and on March 18, 1993, the case was administratively terminated without prejudice to the right of any party to reopen the docket. Arbitration is completed, the arbitrators having awarded $69,843.41 in favor of plaintiff on the ground that Smith Barney failed to meet an appropriate procedural "business-like standard" when terminating plaintiff. The arbitrators found no evidence of discrimination, and further denied relief on plaintiff's claims against the individual claimants in their entirety. On a counterclaim for defamation propounded by defendant John Carlin, defendant-counterclaimant Carlin was awarded $7,500.00 to be paid by plaintiff. The case has been reopened by Order entered May 31, 1994 and is presently before the court upon plaintiff's motion to vacate award of arbitrators and upon the cross-motion of defendants to confirm the award of arbitrators, including Carlin's recovery upon the counterclaim.

*Discussion*

A. *Plaintiff's Motion to Vacate Award Of The Arbitrators On Her Claim Against Defendants On Grounds of Evident Partiality And Defendants' Cross–Motion to Confirm*

Plaintiff was terminated from her position as a broker in the Cherry Hill, New Jersey branch of Smith, Barney on May 1, 1990. Plaintiff ultimately instituted suit in this court, claiming that she was fired for discriminatory reasons, and the matter was ordered to arbitration by Judge Bassler on March 20, 1992. As Judge Bassler's Opinion explains, plaintiff signed a Form U–4 in connection with her employment at Smith, Barney to effectuate the transfer of her registration with certain securities exchanges and organizations. The U–4 form is routinely completed by licensed brokers in order to

become registered with their prospective firms. Paragraph 5 of the form states in its entirety:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions or by-laws of the organizations with which I register, as indicated in Item 10 as may be amended from time to time.

It was pursuant to that contractual clause that plaintiff was ordered to arbitration.

The arbitration was commenced when plaintiff filed a Statement of Claim with the National Association of Securities Dealers (NASD). In her Statement of Claim, plaintiff charged that defendants breached their contract with her, intentionally interfered with her employment, wrongfully failed to pay certain commissions due her, wrongfully terminated her in violation of Title VII of the Federal Civil Rights Act, and that defendants were guilty of gender and race discrimination in violation of public policy. She further alleged intentional infliction of emotional distress, interference with advantageous business relationships, failure to execute sell orders, slander, libel, falsification of U–5 form and negligent supervision. She sought compensatory damages in the amount of $2,719,258.00 and punitive damages in the amount of $8,157,774.00, as well as interest, costs, and attorney's fees.

The panel of three NASD arbitrators was chaired by Charles Boyd. Mr. Boyd was required, pursuant to NASD procedures, to disclose certain background information, including the names of present and previous employers, so that the parties could ascertain whether there might be a conflict of interest in his arbitrating the case. By letter dated February 2, 1993, Mr. Boyd disclosed that he had been employed until July 5, 1991 by W.H. Newbold's, the company which hired plaintiff subsequent to her May, 1990 termination by Smith, Barney.

■ Plaintiff claims that the arbitration award must be vacated because of a failure of Mr. Boyd to disclose additional information which, in plaintiff's view, suggests a potential bias against her. As stated, certain disclosures were made by Mr. Boyd. Specifically, in the Arbitration Disclosure document forwarded to plaintiff some two months prior to the start of the arbitration, Mr. Boyd noted that he had worked for W.H. Newbold, the company currently employing plaintiff. Mr. Boyd supplemented this disclosure by way of the February 2, 1993 letter which stated that Mr. Boyd did not know plaintiff, and that he was not instrumental in her hiring by W.H. Newbold. He offered the opinion that he was capable of "rendering a fair and unbiased decision in this matter." Ex. K. to Friedman Aff. Plaintiff did not seek to disqualify Mr. Boyd on the ground that he once had worked for W.H. Newbold.

Plaintiff's principal complaint on the instant motion is that although Mr. Boyd disclosed that he had once been employed by W.H. Newbold, he failed to disclose that the employment ended when he was fired by the company, and that the firing resulted in Boyd's initiation of an action against Newbold for breach of employment contract. Plaintiff further alleges that "the individual who was instrumental in the decision to employ petitioner was the same party who had the distasteful duty of discharging Mr. Boyd, thereby creating an inference of bias against petitioner." Pl.Br. at 6–7.

Assuming for present purposes that plaintiff's allegations are true, Mr. Boyd's failure to disclose these details about his relationship with W.H. Newbold, which was not a party to the arbitration proceedings, does not entitle plaintiff to relief. The Federal Arbitration Act provides that an arbitration award may be vacated upon application by a party if there was "evident partiality" by the arbitrators. 9 U.S.C. § 10(a)(2).[1] Plaintiff is correct that § 10(a)(2) has been interpreted such that under certain circumstances, such as where an arbitrator has a substantial interest in a firm which has had more than trivial business dealings with a party, a failure to disclose will, in and of itself, require an arbitration award to be vacated. *See Commonwealth Coatings Corp. v. Continental Cas. Co.*, 393 U.S. 145, 151–52, 89 S.Ct.

1. Prior to amendment in 1992, this provision appeared at 9 U.S.C. § 10(b).

337, 340–41, 21 L.Ed.2d 301 (1968); *Middlesex Mut. Ins. Co. v. Levine,* 675 F.2d 1197 (11th Cir.1982). Plaintiff is incorrect that the present case presents such circumstances.

■■■ "In order to show 'evident partiality,' 'the challenging party must show "a reasonable person would have to conclude that the arbitrator was partial" to the other party in the arbitration.'" *Kaplan v. First Options of Chicago, Inc.,* 19 F.3d 1503, 1523 n. 30 (3d Cir.1994) (quoting *Apperson v. Fleet Carrier Corp.,* 879 F.2d 1344, 1358 (6th Cir. 1989)). The *Apperson* court rejected the standard urged by plaintiff here for application in the present case, namely, the "appearance of bias" standard. *Id.,* 879 F.2d at 1358. The applicable standard is whether a "reasonable person would have to conclude that an arbitrator was partial" to a particular party. *Id.* As the Third Circuit recently explained, " '[e]vident partiality' is strong language and requires proof of circumstances 'powerfully suggestive of bias.'" *Kaplan,* 19 F.3d at 1523 n. 30 (quoting *Merit Ins. Co. v. Leatherby Ins. Co.,* 714 F.2d 673, 681–82 (7th Cir.), *cert. denied,* 464 U.S. 1009, 104 S.Ct. 529, 78 L.Ed.2d 711 (1983)).

There is no such powerful suggestion of bias in the instant case. First, to the extent that it is relevant to bias, Mr. Boyd did disclose that he had a prior relationship with Newbold. Second, and more importantly, Newbold is not a party to the present litigation. Rather, Newbold happens to be a company which hired plaintiff subsequent to her termination from Smith, Barney, and as such has no stake in the outcome of plaintiff's case against Smith, Barney; the court is aware of no authority finding evident partiality as a consequence of a relationship between an arbitrator and an entity having no interest in the outcome of the arbitration proceeding. That by coincidence the same individual who terminated Mr. Boyd hired plaintiff does not create an antagonistic relationship between Mr. Boyd and plaintiff, nor does plaintiff allege any connection in fact between Boyd's firing and her hiring by Newbold. Simply stated, a reasonable person would not conclude that because Mr. Boyd may have been terminated by his former employer, he has a bias against plaintiff because she is one of the approximately 230 brokers presently employed by his former employer. Boyd properly disclosed his prior relationship with Newbold as well as the fact he was unaware of plaintiff as a Newbold employee. Any failure of Mr. Boyd to disclose the facts surrounding the termination of his relationship with Newbold is insufficiently consequential to constitute "evident partiality" under the Act.[2]

■■■ Nor has plaintiff stated a claim for vacating the award on the ground of evident partiality by alleging that Mr. Boyd failed to disclose that "he was under review by his [subsequent] employer for violating investment-related statutes." Pl.Br. at 5. Plaintiff sets forth in her moving papers that on October 21, 1993, while the *Bender* arbitration was proceeding, Mr. Boyd was permitted to resign from Robert Thomas Securities in connection with a customer's forgery charges. *Id.* While plaintiff might desire to have been informed of these charges, the fact remains that Mr. Boyd's failure to disclose, prior to the start of the arbitration, that he was "under investigation" for conduct unrelated to any of the parties to the case does not suffice as a basis to set aside an award once it has been rendered.[3] The court re-

---

2. Nor is it apparent that Boyd would bear antipathy against a person asserting wrongful termination. Boyd invoked NASD in his claim against Newbold for wrongful termination in a claim filed August 12, 1991. *See Boyd v. Hopper Soliday & Co., Inc.,* NASD Docket No. 91–02489 (Award dated April 10, 1992). Boyd was successful on his claim against Newbold, gaining an award of full recovery in the amount of $200,000 because his firing was found to be without cause. *Id.* at pp. 2–3 (Attached to Plaintiff's Motion to Vacate Award of Arbitrators filed April 4, 1994, at Ex. E). Mr Boyd's own experience and his successful invocation of the NASD Arbitration

remedy could well have made him at least a sympathetic member of the panel.

3. Based upon representations made by plaintiff at oral argument which suggested that Mr. Boyd may have been removed from the list of eligible NASD arbitrators at or about the time the arbitration award was issued in her case, the court granted plaintiff leave to file a supplemental submission regarding the status of Mr. Boyd during the relevant time period, and further permitted defendant the opportunity to respond to plaintiff's supplemental submission. The information

jects plaintiff's claim that § 10(a)(2), the evident partiality subsection, provides such a basis for vacating the award. There is no logical link between an investigation by Mr. Boyd's current employer and bias in favor of one party or another.

■ Plaintiff further supports her motion by proffering "evidence" of instances of "actual bias." Only two of the alleged instances of bias are supported by citations to the record, and neither of these instances materially advance plaintiff's claim[4]. These claims of bias are that (1) the panel imposed filing fees against petitioner but not against defendant-counterclaimant Carlin as required under § 44(a) of the NASD Code of Procedure, and (2) the panel required plaintiff to deposit adjournment fees and then refused to return payment to her upon a showing of financial need as permitted under § 30(a) of the NASD Code of Procedure. Plaintiff is merely complaining of instances in which she disagrees with unfavorable rulings of the panel. Neither claim could support a finding of evident partiality absent an underlying conflict such as a substantial business relationship between an arbitrator and a party to the litigation. These circumstances, taken together with plaintiff's additional allegations regarding Mr. Boyd's failure to disclose certain information, are not "powerfully suggestive of bias," and no claim for vacating the award of the arbitrators is stated in plaintiff's motion. Accordingly, plaintiff's motion to vacate the arbitrators' decision on her claims against defendants will be denied without the need for an evidentiary hearing. In addition, because there is no ground for vacating the award on plaintiff's claim, this court will grant defendants' motion to confirm the award on plaintiff's claims against

provided to the court establishes that, at all relevant times, Mr. Boyd was qualified to adjudicate plaintiff's claims. The affidavit of John J. Flood, Associate General Counsel, NASD, sets forth that "Charles H. Boyd is not and has not been the subject of any NASD disciplinary proceeding." Flood Aff. ¶ 2. Additionally, the affidavit of Shari L. Strum, Senior Attorney, NASD Arbitration Department, sets forth that Mr. Boyd was an "arbitrator in good standing at the NASD from his appointment on January 22, 1993 through the issuance of the arbitration award on January 4, 1994 and from that date to the present." She testifies that no disciplinary action has been taken against him from January 22, 1993 to the present. Ms. Strum further explains, as counsel for defendant did at oral argument, that, pursuant to NASD Code of Arbitration § 19(c)(2), Mr. Boyd will remain eligible to serve as an "industry" arbitrator for three years after October 29, 1993, the date he left the securities industry.

In her letter dated July 20, 1994, plaintiff attacks the veracity of the affidavits submitted at her behest by the NASD officials; the allegations against the affiants are baseless, and will be disregarded by the court. In addition, Ms. Bender attaches to her letter three documents dated April, 1994, which evidence "claims" against Mr. Boyd by individuals whose accounts he handled: (1) an NASD Arbitration Statement of Claim filed by Jack and Ann Stratton v. Robert Thomas Securities, Inc. on April 26, 1994; (2) an attorney's letter dated April 29, 1994 to Robert Thomas Securities, Inc., on behalf of Frances Ritchey Gentieu; and (3) an attorney's letter dated April 8, 1994 to Raymond James & Associates on behalf of Alyn Robinson Caulk. As defendants point out in their opposition submission, these letters evidence nothing more than that complaints were made against Mr. Boyd by private customers, unconnected to his role as an NASD arbitrator, subsequent to the disposition of plaintiff's arbitration case; these complaints have not yet been adjudicated and Mr. Boyd continues to be qualified to serve as an NASD arbitrator to this day. In sum, plaintiff's supplemental materials fail to materially advance plaintiff's claim of evident partiality.

4. The alleged instances of actual bias not supported by references to the record are: (a) permitting defendants to offer evidence supporting their position in discharging plaintiff which was not part of the pleadings; (b) failure of the panel to follow its own mandates with regard to required discovery ordered by the panel to be produced by defendant, while strictly requiring plaintiff to adhere to discovery orders; and (c) sustaining defendants' objections to plaintiff's exhibits on the ground that they had not been provided in discovery upon the simple assertion of defendants' counsel during the proceedings while not affording the even-handed right to plaintiff to the same courtesies. Pl.Br. at 9–10. The record of the arbitration proceedings, supplied by defendants in opposition to plaintiff's motion, constitutes approximately two feet of material. The court is not required to comb this extensive record on its own to discern whether plaintiff's claims (a)–(c) are supported. It was incumbent upon plaintiff, as the moving party, to support her argument by providing the record and directing the court to particular examples of alleged bias, and this plaintiff failed to do. In any event, to the extent plaintiff complains that certain isolated rulings did not go her way during the course of the protracted arbitration proceedings, the court can discern no grounds for relief.

defendants. *See* 9 U.S.C. § 9; *Barbier v. Shearson Lehman Hutton, Inc.*, 752 F.Supp. 151, 158 (S.D.N.Y.1990), *rev'd in part on other grounds*, 948 F.2d 117 (1991) (court must confirm an arbitration award unless the award is vacated, modified, or corrected as provided for under sections 10 and 11 of Federal Arbitration Act).

B. *Plaintiff's Motion to Vacate Award of the Arbitrators On Defendant–Counterclaimant Carlin's Counterclaim and Defendants' Cross–Motion to Confirm The Award On The Counterclaim*

1. Plaintiff's Argument That The Arbitrators Exceeded The Scope of Their Authority When They Entertained The Counterclaim

 Plaintiff next moves to vacate the award in favor of defendant-counterclaimant Carlin and against plaintiff for $7,500.00 on Carlin's counterclaim for damages. The counterclaim alleges that plaintiff defamed Carlin both in print (in an article authored by someone other than plaintiff appearing in an industry publication entitled *Financial Planning on Wall Street* ) and by verbal comments to individuals in the industry; the arbitrators received evidence on the counterclaim and found in favor of Carlin. Plaintiff claims that the award must be vacated because the arbitrators lacked jurisdiction over the counterclaim. Plaintiff alleges that because the contractual agreement to arbitrate pertained only matters arising out of plaintiff's employment, and because the alleged instances of defamation occurred some time

subsequent to plaintiff's termination, the counterclaim was not properly before the arbitration panel.

As defendants point out, plaintiff raises this objection for the first time in her motion to vacate. It is not raised in plaintiff's Answer to the counterclaim, nor was it raised in any other formal manner before the arbitrators, and thus plaintiff has waived her right to object to the panel's jurisdiction over her claim.[5] In order to further the strong federal policy in favor of arbitration and to preserve the speed and efficiency of arbitration proceedings, the Third Circuit has made clear that, even when the objection to an arbitration award is jurisdictional in nature, a party who fails to address the objection before the arbitrators in the first instance waives the right to raise the jurisdictional objection on appeal. *Teamsters Local No. 764 v. J.H. Merritt and Co.*, 770 F.2d 40, 42–43 (3d Cir.1985). *See also Amalgamated Meat Cutters & Butcher Workmen of North America, Local 195 v. Cross Brothers Meat Packers, Inc.*, 518 F.2d 1113, 1121 and n. 19 (3d Cir.1975) (failure to object to submission of claim to a single arbitrator rather than a panel waived); *compare Kaplan*, 19 F.3d at 1510–13 (plaintiffs did not waive objections to submitting claim to arbitration where they reasserted objection regularly during the arbitration). This rule ensures that a party will not be permitted to await a ruling and find out whether it is adverse before asserting objections on grounds about which she had knowledge prior to the award. *See, e.g.,*

---

5. When pressed at argument as to when, if ever, an objection was made to the panel's jurisdiction over the counterclaim, plaintiff referenced only a letter dated May 12, 1993 from Mr. Peruto, plaintiff's arbitration counsel, to the NASD. The record contains only a letter dated May 10, 1993 from Mr. Peruto to Shari Sturm of the NASD, which reads, in pertinent part, as follows:

I am in receipt of the fax copy of the letter dated May 5, 1993 by David S. Friedman, Esquire, to you. I also have a copy of your communication of the same date advising Mr. Friedman of the procedure involved in counterclaims. I therefore assume that Mr. Friedman's letter is written to comply with your direction to him in your letter. I therefore respond as follows.

Sandra Bender filed her Amended Statement of Claim dated January 6, 1993 and it is indi-

cated that it was received by NASD on January 12, 1993. Mr. Friedman's proposed counterclaim apparently refers to matters set forth in the Amended Statement of Claim as well as the Fall, 1992 edition of Financial Planning on Wall Street. It therefore is unmistakably clear that the gravamen of the counterclaim was well known to the Respondent prior to any hearings and within the time required for response. Obviously, therefore, this is so far out of time that it should not be permitted.

We therefore object to any counterclaim filing at this late date.

Ex. "N" to Friedman Aff. Clearly, this letter propounds only a timeliness objection and fails to set forth a jurisdictional objection to the counterclaim.

*Int'l. Brotherhood of Electrical Workers v. Coral Electric Corp.*, 576 F.Supp. 1128, 1134 (S.D.Fla.1984). Because plaintiff failed to address the objection to the arbitrators' authority to hear the counterclaim to the arbitrators in the first instance and thus waived any jurisdictional objections to their consideration of the counterclaim, this court will not consider the merits of the objection. The award in favor of defendant-counterclaimant Carlin will not be disturbed on this ground.

2. Plaintiff's Argument That The Arbitrators Manifestly Disregarded The Law In Finding In Defendant–Counterclaimant Carlin's Favor On The Counterclaim

■■■ As to the merits of the award on the counterclaim for defamation, plaintiff argues that the award must be vacated because the arbitrators acted in "manifest disregard" of the law when they rejected plaintiff's defense of truth and found in favor of defendant-counterclaimant Carlin. The "manifest disregard" doctrine may provide a basis for vacating an award in some circumstances, but its scope is exceedingly narrow:

> [Manifest disregard] means more than error or misunderstanding with respect to the law. The error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the term "disregard" implies that the arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it.... The governing law alleged to have been ignored by the arbitrators must be well defined, explicit, and clearly applicable. We are not at liberty to set aside an arbitration panel's award because of an

arguable difference regarding the meaning or applicability of laws urged upon it.

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 933–34 (2d Cir.1986) (citations omitted). *Accord, Tanoma Mining Co., Inc. v. Local Union No. 1269, United Mine Workers of America*, 896 F.2d 745, 749 (3d Cir.1990) (arbitrator did not act in manifest disregard of the law although his understanding of agency law was "hazy," where arbitrator was attempting to apply principles as he understood them).

■■■ The relevant substantive law of defamation was in no way disregarded by the arbitration panel in the instant case. Defamation imposes liability for (1) publication (2) of statements that are false (3) that injure the reputation of another. *Printing Mart–Morristown v. Sharp Electronics Corp.*, 116 N.J. 739, 765, 563 A.2d 31 (1989). It follows that truth is a defense to a charge of defamation. *Id.* A communication is "published" to a third person when it is communicated by way of a writing or by way of a verbal or other act. W. Prosser and W.P. Keeton, *The Law of Torts*, § 113, at 797 (5th ed. 1984).

Here, there was testimony about the publication of allegedly defamatory material by plaintiff to the author of the *Financial Planning on Wall Street* article, Ms. Amey Stone. On direct examination in the counterclaim case, plaintiff admitted that she took a copy of the NASD statement of claim she filed in order to initiate the arbitration proceeding and voluntarily sent it to Ms. Stone. Tr. 623:5–10. As plaintiff conceded at the hearing, she was aware at the time she sent Ms. Stone a copy of the pleading that within the four corners of the document were "some very serious allegations" that plaintiff's supervisor, Mr. Carlin, had discriminated against her on the basis of gender. Tr. 624:18–24.[6]

6. The information furnished by plaintiff to Ms. Stone ultimately formed the basis of the *Financial Planning* article, which read in pertinent part:

> Stockbroker Sandra Bender used to shrug off tales of discrimination against brokers as the whining of poor producers looking for an excuse. Consistently a top producer, she took a perverse sort of pride when colleagues referred to her as the "Iron woman," or when one veteran male broker said to others, "Bender can swim with the best of them."

> But she claims it took one Smith Barney manager only four months in 1990 to render her emotionally shaken and decimate her $350,000 production book. Eventually, she found herself out of a job. "I kept lying in bed thinking, what could I have done wrong," Bender says.

> Bender is now one of the few women brokers who will openly attest that discrimination exists in the brokerage industry. She is bringing the Mount Laurel, New Jersey branch of-

Once the arbitration panel rejected plaintiff's discrimination claim, it follows that it rejected the version of events set forth in her statement of claim and thus rejected plaintiff's "truth" defense to the counterclaim. Moreover, once plaintiff admitted that she voluntarily provided a copy of the NASD pleading to Ms. Stone, plaintiff could no longer assert a defense of absolute privilege to the defamation counterclaim. In *Citizens State Bank of New Jersey v. Libertelli*, 215 N.J.Super. 190, 521 A.2d 867 (App.Div. 1987), the court noted:

> Distribution of court-filed documents to the press or other interested persons merely republishes material otherwise absolutely privileged. However, such distribution is not protected because it is foreign to the purposes of the privilege and serves only the interest of the distributor in getting one side of the story out first or most vividly. . . . Distribution to the press and public of pleadings and other documents may be a tactic chosen by litigators, but it is not immunized as a part of the judicial process.

*Id.* at 196–99, 521 A.2d 867. Thus, even if the arbitrators were to have afforded the confidential NASD pleading the privilege ordinarily afforded pleadings filed in open court, the statement of claim would not be privileged for purposes of the counterclaim, as it was published to a magazine reporter to assist her in writing a piece on the subject of gender discrimination in the brokerage industry rather than to directly advance plaintiff's litigation. Thus, under New Jersey law, the purposeful dissemination of defamatory allegations contained in a pleading, for purposes of obtaining publicity of the allegation, causes the otherwise privileged allegations to lose their protected status when published.

A second question is whether the Arbitration Panel could have reasonably found Ms. Bender's comments to the news reporter to have been defamatory. In New Jersey, a generalized accusation of bigotry is not actionable; a false claim of discriminatory conduct can become actionable when accompanied by "reasonably specific facts that are capable of objective proof of truth or falsity." *Ward v. Zelikovsky*, 136 N.J. 516, 539, 643 A.2d 972 (1994). A false allegation that a manager engaged in invidious gender discrimination against a subordinate employee by firing her can become actionable in defamation if the statement was made "in such a manner or under such circumstances as would fairly lead a reasonable listener to conclude that he or she had knowledge of specific facts supporting the conclusory allegation." *Id.* The Arbitration Panel's finding in this regard is supported by evidence in the record sufficient to support their finding that Ms. Bender's allegations against Carlin were false and specific and harmful.

With the evidence and relevant substantive law of New Jersey so understood, there is no basis for challenging the arbitrators' decision on the defamation counterclaim on the ground of manifest disregard for the law. To the contrary, the decision rendered appears to be entirely consistent with an application of governing legal principles to the facts found by the panel.[7] Plaintiff's motion to vacate the award in favor of defendant-counterclaimant Carlin on the basis of manifest disregard for law will, accordingly, be denied. Defendants' cross-motion to confirm that award will be granted.

## Conclusion

For the reasons stated herein, plaintiff's motion to vacate award of arbitrators will be

---

fice manager she worked under to arbitration next spring in a wrongful termination and discrimination claim. She says she was forced to resign on 45 minutes notice without any cause or explanation other than the manager telling her she made him "uncomfortable."

7. As to the amount of damages awarded on the counterclaim, $7,500.00, the court has reviewed the record and concludes that there was at least some evidence to support the award. Mr. Carlin testified that, although no one came out and stated that they would not interview with him as

a result of the *Financial Planning* article, he believed that his recruitment efforts were affected by the publication of the article. He stated that there was a "significant decline in the number of appointments" he was able to make. Tr. 10/29/93 at 700:10–12. Of course, Carlin was not required to prove special damages, because occupational misconduct, which was the subject of the defamation claim, is one of the four recognized categories of slander *per se. See Ward*, 136 N.J. at 526, 643 A.2d 972.

denied. Defendants' cross-motion to confirm the award will be granted.

An appropriate Order follows.

### JUDGMENT ORDER

This matter having come before the court upon the motion of plaintiff, Sandra Bender, to vacate award of arbitrators, and upon the cross-motion of defendants to confirm the award of arbitrators; and the court having considered the submissions of the parties and having heard oral argument on July 1, 1994; and having considered the supplemental submissions; for the reasons stated in the Opinion of today's date;

IT IS this 26th day of October, 1994 hereby

ORDERED that plaintiff's motion to vacate the award of arbitrators is DENIED; it is

FURTHER ORDERED that defendants' motion to confirm the award of arbitrators is GRANTED; and it is

FURTHER ORDERED that the award of the NASD arbitration panel in "Sandra Bender v. Smith Barney Harris Upham & Co., et al.," No. 92–02080 (date of decision January 4, 1994), be and hereby is CONFIRMED in its entirety as to all claims, including the claims of Sandra Bender and the counterclaim of Richard T. Carlin; and it is

FURTHER ORDERED AND ADJUDGED that judgment is hereby entered in favor of Defendants, Richard T. Carlin, John Maine, and Ronald H. Reisman and against Plaintiff Sandra Bender dismissing the Complaint with prejudice; and it is further

ORDERED AND ADJUDGED that pursuant to the arbitration award, Smith Barney Shearson, Inc. shall pay to Plaintiff Sandra Bender the sum of $69,843.41; and it is further

ORDERED AND ADJUDGED that pursuant to the arbitration award, judgment is hereby entered in favor of Defendant/Counterclaimant, Richard T. Carlin, and against Plaintiff/Counterclaim Defendant Sandra Bender in the amount of $7,500.00, and Sandra Bender is enjoined from use of the arti-

cle, which was the subject of the arbitration award, in its original or copied form or by verbal reference thereto, except as necessary for purposes of this litigation; and it is further

ORDERED that the parties shall bear their respective costs and attorneys' fees of the NASD arbitration, unless specifically addressed in the arbitration award.

No costs to be assessed by Clerk herein.