Hossain SANEII, et al., Plaintiffs,

v.

William T. ROBARDS, et al., Defendants.

Civil Action No. 3:01CV–171–H.

United States District Court, W.D. Kentucky, at Louisville.

Oct. 30, 2003.

David S. Kaplan, Steven M. Crawford, Frost, Brown, Todd LLC, Louisville, KY, for Plaintiffs.

Alice B. Herrington, Woodward, Hobson & Fulton, Anne W. Miller, Kenneth L. Sales, Sales, Tillman & Wallbaum, Louisville, KY, for Defendant.

## MEMORANDUM OPINION

HEYBURN, Chief Judge.

This Court now considers a number of motions, all of which address whether the Arbitration Award dated December 26, 2002, and the Supplement to the Arbitration Award (collectively the "Award") dated February 19, 2003, should be confirmed, vacated, or modified. On May 24, 2001, this Court compelled arbitration of all issues in this case, including fraudulent inducement of the contract. *See Saneii v. Robards*, 187 F.Supp.2d 710 (W.D.Ky. 2001). The Court also entered an Amended Order holding the case in abeyance until the arbitrator had reached a decision on all issues. After the arbitrator decided all issues against Plaintiffs, these motions followed.

Citing a Kentucky Court of Appeals decision, *Marks v. Bean*, 57 S.W.3d 303 (Ky. App.2001), Plaintiffs ask the Court to vacate the arbitration award because the arbitrator was without jurisdiction to hear the claim of fraudulent inducement. The *Marks* court held that claims of fraudulent inducement were for the court, not an arbitrator, to decide. The Court of Appeals decided *Marks after* this Court had compelled arbitration but before the arbitrator began his proceedings. Naturally, Defendants' primary objective is that the Court confirm the arbitration award in their favor and dismiss all Plaintiffs' claims.

For the reasons explained below, the Court concludes that the Award must be vacated because, under Kentucky law, the arbitrator indeed exceeded his authority by deciding the fraudulent inducement issue.

## I.

At the heart of the current dispute is Plaintiffs' assertion that this Court was wrong to send this entire case to arbitration. This is beyond further argument, Plaintiffs say, in the light of *Marks v. Bean*. As an initial matter, therefore, the Court should probably determine whether the new Kentucky law and policy enunciated in *Marks* could decide the outcome of this case.

In *Marks*, the Kentucky Court of Appeals held that under Kentucky law an arbitration agreement does not bind a party to arbitrate a claim of fraudulent inducement to contract. A party to the contract is entitled to have a court hear such a claim. In reaching this conclusion and rejecting the majority of other state and federal courts' views, the Court of Appeals concluded that the state's strong policy against fraud supported and, indeed, required such a result.[1]

The facts of the *Marks* case are very similar to ours. The plaintiffs purchased a home from the defendants and alleged that the defendants fraudulently induced them into the contract to purchase the home by misrepresenting and concealing defects in the brick veneer. *Marks*, 57 S.W.3d at 304. The complaint alleged that the representations on the disclosure form were false and fraudulent and that the defendants were aware of the condition of the brick and consciously sought to conceal it

---

1. The majority view is represented most prominently by *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). It is worth noting, however, that the three-justice dissent written by Justice Black strongly supports the Court of Appeals' policy. *Id.* at 407–425, 87 S.Ct. 1801.

from the plaintiffs. *Id.* The Sales and Purchasing Contract in *Marks* contained a binding arbitration clause very similar to the one here. It is the same as that used generally by the Kentucky Real Estate Commission. *Id.* at 305. The plaintiffs argued that the arbitration clause was not enforceable pursuant to the savings clause in K.R.S. 417.050, which excludes from arbitration "such grounds as exist as law for the revocation of any contract." *Id.* The trial court agreed and held that "[t]he existence of fraud is a factual question to be determined by the trier of fact ... the Court finds that the arbitration clause in the parties' sale contract is not enforceable." *Id.* The Kentucky Court of Appeals agreed.

The appellate court recognized that, despite the analogous language in the FAA and the KUAA, Kentucky courts would not adopt the majority view. The court instead determined that because the FAA interpretation "disproportionately elevates the policy favoring arbitration over the strong public policy against fraud .... When the making of the agreement itself is put in issue, as is the result of a claim of fraud in the inducement, that issue is more properly determined by those trained in the law." *Id.* at 307.[2] The court held that despite the arbitration agreement, the fraud in the inducement issue would go to the court and not the arbitrator.

The Court's reading of *Marks* leaves no doubt that current Kentucky law requires vacating the prior arbitration decision as to the issue of fraudulent inducement. However, serious questions remain as to whether this Court should apply Kentucky law and, if so, whether this Court can consider *Marks* in the current procedural context.

## II.

■ The FAA, where applicable, preempts all state law. The Court can apply *Marks* only if the FAA does not govern these circumstances. Therefore, the Court must consider whether this contract for the sale of residential real estate is "a transaction involving interstate commerce" within the meaning of § 2 of the FAA. 9 U.S.C.A. § 2. The reach of "involving commerce" in § 2, is as broad as Congress' exercise of its full commerce power. *See Allied–Bruce Terminix Co., Inc. v. Dobson,* 513 U.S. 265, 273–4, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995).

■ The primary purpose of the FAA is to ensure the uniform enforcement of arbitration agreements. *Id.* at 270, 115 S.Ct. 834; *see also Volt Information Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). "The effect of the Arbitration Act is thus to create a body of substantive federal law on arbitration governing any agreement that is within the Act's coverage." *Foster v. Turley,* 808 F.2d 38 (10th Cir.1986). Thus, the FAA creates uniformity by applying to all cases involving interstate commerce.

■ Notwithstanding its congenial effects on interstate commerce, the sale of residential real estate is inherently intrastate. Contracts strictly for the sale of residential real estate focus entirely on a commodity-the land-which is firmly planted in one particular state. The citizenship of immediate parties (the buyer and the seller) or their movements to or from that state are incidental to the real estate transaction. Those movements are not part of the transaction itself. All of the legal relationships concerning the land are

---

**2.** The court also noted that issues involving breach or violation of the agreement, which are primarily issues of fact, can be left to the expertise of those trained in the respective fields of arbitration.

bound by state law principles. Single residential real estate transactions of this type have no substantial or direct connection to interstate commerce.[3] For all these reasons, logic suggests that such transactions are not among those considered as involving interstate commerce.

To characterize a residential real estate as involving interstate commerce under these circumstances would actually promote a lack of uniformity in the law, which is exactly contrary to one of the FAA's stated purpose. If the FAA applied to out-of-state purchasers of Kentucky real estate, different rules would apply in that considerable volume of transactions concerning property here. Applying Kentucky law to all Kentucky real estate transactions creates a more uniform and, therefore, a more equitable body of law.

Two district courts have reached the same conclusion that a real estate contract does not involve interstate commerce for purposes of the FAA. *See Cecala v. Moore,* 982 F.Supp. 609 (N.D.Ill.1997); *see also SI V, LLC v. FMC Corp.,* 223 F.Supp.2d 1059 (N.D.Ca.2002). While these cases are of limited analytic value,[4] they reinforce a common understanding that a residential real estate contract, even one involving

parties of different states, does not involve interstate commerce.

On the other hand, more complex transactions related to land may involve interstate commerce. For instance, in *Allied–Bruce,* the United States Supreme Court found that a termite extermination contract between an Alabama homeowner and a local Terminix franchise did involve interstate commerce. 513 U.S. at 269, 115 S.Ct. 834. The Court came to this conclusion by applying the broad interpretation of § 2 of the FAA. *Id.* The Court's analysis was that Terminix was a commercial entity, the parties were from multi-states, and the termite-treating and house-repairing materials used by the defendants came from outside Alabama. *Id.* at 281, 115 S.Ct. 834. More importantly, the Court articulated and emphasized the purposes behind the FAA and why a broad interpretation of "a contract evidencing a transaction involving commerce" was necessary in order to be consistent with those purposes. *Id.* These circumstances are entirely different than those here.

Other courts have also held that contracts for the construction of various commercial buildings, and even the construction of sewers, involved interstate commerce for purposes of the FAA. *See Monte v. Southern Delaware County Au-*

---

**3.** This is seemingly the case even if the buyer obtained financing from a bank, which happened to participate in interstate commerce. This tangential effect is not enough to bring a sale of a home within interstate commerce and the FAA.

**4.** Although the District Court in *Cecala v. Moore,* 982 F.Supp. 609, 612 (N.D.Ill.1997) recognized and applied the broad interpretation of interstate commerce for the purposes of the FAA applying to arbitration agreements, it held that a real estate contract did not evidence a transaction involving interstate commerce, so that the FAA was inapplicable. The real property was in Illinois, the vendors were outside of Illinois, and there was no

evidence that transactions incident to the sale too place outside Illinois. *Cecala,* 982 F.Supp. at 612. Therefore, the court concluded that the arbitration laws of Illinois governed the dispute between the purchasers and vendors.

In *SI V, LLC v. FMC Corp.,* 223 F.Supp.2d 1059 (N.D.Ca.2002), the court held the FAA did not apply to breach of contract claims between a in-state buyer and out-of-state seller of real property because it did not involve interstate commerce.

Neither of these cases contained an extensive analysis of the "involving interstate commerce" standard as applied to residential real estate.

*thority*, 321 F.2d 870 (3rd Cir.1963); *Sears Roebuck and Co. v. Glenwal Co.,* 325 F.Supp. 86 (S.D.N.Y.1970); *Fite and Warmath Construction Co., Inc. v. MYS Corp.,* 559 S.W.2d 729 (Ky.1977). Although these cases concerned facilities which are located in one state and remained in one state, like the house in the current case, the scope of these contracts was much broader because of the interstate, commercial aspect of the transactions. None of these cases involves a straightforward residential real estate transaction.

Bearing in mind the historical intrastate nature of residential property transactions, as well as the Supreme Court's analysis of purposes of the FAA, the Court concludes that a residential real estate sales contract does not evidence or involve interstate commerce. This is true despite the broad reach of "interstate commerce," as articulated by the United States Supreme Court in *Allied–Bruce.* 513 U.S. at 265, 115 S.Ct. 834. The Court will apply Kentucky law, or *Marks,* to the fraudulent inducement claim.

## III.

Irrespective of the application of *Marks v. Bean* to our general circumstances, Defendant raises a number of arguments why this Court should not consider the issue. They argue (1) that Plaintiff has filed an improper motion; (2) that, in any event, Plaintiff should have appealed to the Sixth Circuit or moved for a stay of the arbitration; and (3) that Plaintiff has waived its right to challenge the arbitration. All of these arguments contain the common theme that Plaintiffs should have raised *Marks v. Brown* prior to proceeding with arbitration. While this argument has a certain appeal, the Court cannot find any reason for not now deciding these issues correctly under Kentucky law. The Court will consider each argument in turn.

### A.

■ First, Defendants assert that because Plaintiffs did not move either to vacate the arbitration award under K.R.S. 417.160, or to modify the award under K.R.S. 417.170, the Court must now confirm the award under K.R.S. 417.150.[5] Plaintiffs' subsequent responses,[6] however, have clarified their request that the Court vacate the arbitration award because the arbitrator exceeded his authority and jurisdiction.[7] Regardless, a pleading error of this type would not bar this Court's exercise of subject matter jurisdiction. In *Green v. Ameritech Corp.,* 200 F.3d 967, 973–74 (6th Cir.2000), the Sixth Circuit held that a similar "pleading error did not bar the district court's exercise of subject matter jurisdiction." *Id.* The Court concludes that the form of pleading does not invalidate Plaintiffs' request to vacate.

### B.

Defendants next argue that, regardless of the foregoing analysis, Plaintiffs cannot raise the issue of arbitrator jurisdiction at this late date. They assert that Plaintiffs should have appealed directly to the Sixth

---

5. K.R.S. 417.150 states that "[u]pon application of a party, the court *shall* confirm an award unless, within the time limits hereinafter imposed, grounds are urged for vacating or modifying or correcting the award, in which case the court shall proceed as provided in K.R.S. 417.160 and 417.170." (emphasis added)

6. In both Plaintiffs' "Reply Memorandum in Further Support of Motion to Void Arbitra-

tion Award," on June 17, 2003, and the "Response in Opposition to Defendants' Renewed Motion for Confirmation of the Arbitration Award and to Dismiss Complaint," on June 23, 2003, the Plaintiffs clarified under what statutory provision they were asking the Court to vacate or void the arbitrator's award.

7. K.R.S. 417.160(c) states that one ground for the Court to vacate an arbitration award is if the arbitrators exceed their powers.

Circuit from this Court's order compelling arbitration. The Court disagrees.

■ The Kentucky statute covering arbitration appeals, K.R.S. 417.220, specifically does not include court orders compelling arbitration. *See Fayette County Farm Bureau Federation v. Martin,* 758 S.W.2d 713 (Ky.App.1988). "We must presume that they meant to exclude anything not listed and we cannot, by interpretation, 'legislate' in what they purposefully left out." *Id.* Therefore, under Kentucky law, Plaintiffs could not appeal the Order compelling arbitration until this Court entered some final judgment resulting from the arbitration, i.e. confirming or vacating this award. *Id.* at 714. This Court merely held the federal case in abeyance, so that the order compelling arbitration was not final on its own terms.

■ The fact that Plaintiffs could not directly appeal this order obviates Defendants' argument that by not bringing up the *Marks* case earlier, Plaintiffs wasted Defendants' time and money in the arbitration. "That a party will be exposed to the inconvenience and cost of litigation does not alone justify immediate review of an otherwise nonfinal order." *See National Gypsum Co. v. Corns,* 736 S.W.2d 325 (1987). Defendants' argument that either Plaintiffs should have appealed the arbitration compulsion sooner, or that appeal was the proper procedural mechanism, are both wrong.

■ Defendants also assert that Plaintiffs should have used other mechanisms, such as a motion to stay arbitration or motion to reconsider, to raise the *Marks* case sooner. Plaintiffs did not do so, Defendants argue, because they wanted first to see the result, in case favorable, before asserting the arbitrator's lack of authority. Perhaps this is true. However, one need not seek a stay of arbitration in order to preserve its objection to jurisdiction. *See*

*Kaplan v. First Options of Chicago, Inc.,* 19 F.3d 1503, 1510 (3rd Cir.1994).

The *Kaplan* case is similar to ours in that one party argued that the other could not challenge the arbitrator's lack of jurisdiction because that party did not raise the issue earlier. It is different because it did not begin in a civil court. Instead, the parties went directly into arbitration and appellants contested jurisdiction within the arbitration, over a period of many years and including a motion to dismiss to the arbitrators. *Id.* at 1508. The court said that the fact that the appellants disputed the arbitrator's jurisdiction, while still arguing the merits before the arbitrators, was not a waiver of its subsequent jurisdictional objections. *Id.*

■ *Kaplan* stands for the proposition that it is not necessary to ask for a stay of arbitration in order to later object to the arbitrator's jurisdiction. Its logic is even more applicable here because Plaintiffs *formally* objected to the jurisdiction of the arbitrator on the issue of fraudulent inducement. Plaintiffs brought this civil action and then proceeded to unsuccessfully argue that fraudulent inducement belonged in court, not in arbitration. To now say that Plaintiffs needed to argue again, once they were ordered to arbitration and it had begun, that the arbitration should be stayed because of this *very same issue of fraudulent inducement,* places an unfair burden on Plaintiffs.

## C.

Finally, Defendants say that Plaintiffs waived their objection that the arbitrator exceeded his authority by not raising this argument to the arbitrator himself. Defendants assert that, instead of pointing out *Marks* to this Court or to the arbitrator, Plaintiffs waited until the end of the arbitration in order to see if the outcome was favorable. This argument is founded

on a theory similar to that which the Court has just rejected.

■ To be sure, lawyers who practice in federal court have an obligation to assist the judges to keep within the boundaries fixed by the laws. *See BEM I, L.L.C. v. Anthropologie, Inc.*, 301 F.3d 548 (7th Cir. 2002). They also have a duty to raise jurisdictional issues. *Id.* at 551–52. However, in this case, Plaintiffs did argue that the arbitrator lacked jurisdiction to decide issues of fraudulent inducement. The Court cannot now say Plaintiffs are at fault for not reasserting the issue after the Court decided it.

True, one can find numerous cases in which a party is deemed to have waived its right to object to the arbitrator's jurisdiction or authority. However, each of those cases is distinguishable in a fundamental way from the current case. In *Mays v. Lanier Worldwide Inc.*, 115 F.Supp.2d 1330 (M.D.Ala.2000), for instance, the district court found that plaintiff's failure to challenge arbitrability in a timely fashion, and subsequent participation in the arbitration proceedings, resulted in a waiver of the right to object. *Id.* at 1340. However, there are significant differences between *Mays* and the instant case. In *Mays*, the plaintiff actually brought the arbitration, actively participated in every phase and only after losing objected to the arbitrator's jurisdiction. *Id.* The district court found that because the plaintiff did not seek a stay in federal court, but rather vigorously prosecuted his claims in the arbitration proceedings, he could not seek a second chance in court. *Id.* at 1343.

In *Bender v. Smith Barney, Harris Upham & Co., Inc.*, 901 F.Supp. 863, 869–70 (D.N.J.1994), the court held that the plaintiff waived her right to object to the panel's jurisdiction over her claim because she failed to address the objection to the arbitrators in the first instance. The plaintiff initially brought the case to federal court

but was ordered to arbitration. *Bender*, 901 F.Supp. at 869–70. The plaintiff never contested arbitration and never argued that the arbitrator was without jurisdiction. *Id.* The plaintiff only asserted lack of jurisdiction when the defendant moved to confirm the award. *Id.* In this respect *Bender* differs significantly from our case.

■ At all points of the litigation prior to this Court ordering arbitration, Plaintiffs have given all the necessary indications that they were against arbitrating the issue of fraudulent inducement. Failing to raise *Marks* prior to arbitration or failing to raise jurisdictional issues with the arbitrator, after a federal court had rejected those arguments, is not cause for waiver. Plaintiffs contested the arbitrator's jurisdiction over fraudulent inducement. By doing so, they have preserved their right to contest confirmation of the award.

## IV.

■ Whether an arbitrator has exceeded his authority is a question of law reviewed *de novo*. *See MidMichigan Reg'l Med. Ctr.-Clare v. Professional Employees Div. of Local 79, Serv. Employee Int'l Union*, 183 F.3d 497, 501 (6th Cir.1999); *see also Green v. Ameritech Corp.*, 200 F.3d 967, 974 (6th Cir.2000). Defendants argue that Plaintiffs are asking the Court to reconsider its own decision, rather than actually challenging the arbitration award. They say that the Court should confirm the arbitration award and require Plaintiffs to challenge, on appeal to the Sixth Circuit, the appropriateness of this Court referring all issues to arbitration.

■ Were this Court to do so, the Sixth Circuit would then look at this issue of whether the award should have been confirmed *de novo* and whether the arbitrator exceeded his power *de novo*. *Id.*; *See also Glennon v. Dean Witter Reyn-*

*olds, Inc.*, 83 F.3d 132, 135 (6th Cir.1996). The Sixth Circuit would look at *all* of Kentucky's current law, including *Marks*, in its *de novo* review. It would necessarily conclude that this Court incorrectly anticipated Kentucky law. The Sixth Circuit would likely then remand the issue of fraudulent inducement to this Court. This Court would follow *Marks*.

Such a lengthy process is unnecessary. The arbitration did not actually begin until September 24, 2002—well after *Marks* became Kentucky law on July 20, 2001.[8] Although *Marks* was not the law when the arbitration was compelled, it was the law when the arbitration actually began. This Court can and should evaluate the arbitrator's jurisdiction according to *Marks*.

The Court will enter an order consistent with this Memorandum Opinion.

### ORDER

Various motions are pending which question whether the arbitration award should be affirmed or vacated. Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that the arbitration order is SUSTAINED as to its finding that it did not breach the contract and is VACATED as to its finding that Defendants did not fraudulently induce Plaintiffs to enter the contract.

IT IS FURTHER ORDERED that the Court shall decide the issue of whether Plaintiffs were fraudulently induced to enter the contract.

The Court will set a pretrial conference in the near future.

---

**8.** The Court is not deciding whether *Marks* applies retroactively to cases decided before its issuance. The Court does not have to reach this because the actual arbitration did not begin to after the *Marks* holding.