Ron MAYS, Plaintiff,

v.

LANIER WORLDWIDE, INC., et al., Defendants.

No. CIV.A. 97–D–1451–N.

United States District Court, M.D. Alabama, Northern Division.

Sept. 27, 2000.

Julian L. McPhillips, Jr., Karen Sampson Rodgers, McPhillips, Shinbaum & Gill, Montgomery, AL, for plaintiff. represented by Rodgers.

William D. Coleman, Capell & Howard, PC, Montgomery, AL, Raymond L. Jackson, Jr., Auburn, AL, Daniel M. Shea, Atlanta, GA, Jay Daniel St. Clair, Bradley, Arant, Rose & White, LLP, Birmingham, AL, for defendants.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is Plaintiff Ron May's ("Plaintiff") Motion To Vacate The Arbitration Award Or, In The Alternative, Motion For De Novo Review (Doc. No. 2) ("Pl.'s Mot. To Vacate"), filed September 30, 1997. Also before the court is Defendants Lanier Worldwide, Inc. ("Lanier"), Peter Brandsma ("Brandsma") and Don Deweese's ("Deweese") (collectively "Defendants") Cross–Motion For Summary Judgment And Motion To Confirm Arbitration Award (Doc. No. 15) ("Defs.' Mot."), filed November 19, 1997. The Parties have filed briefs, supplemental briefs and evidentiary submissions in support of and in opposition to their respective Motions,[1] and the court has carefully consid-

ered the arguments of counsel, the relevant law, and the record as a whole. For the reasons stated herein, the court finds that Plaintiff has waived his right to object to the jurisdiction of the arbitrator to hear Plaintiff's dispute and that Plaintiff has failed to demonstrate that the arbitrator's award should be vacated on any of the statutory grounds provided in the Federal Arbitration Act, 9 U.S.C. § 10(a), or on any of the non-statutory grounds carved out by case law. Accordingly, the court finds that Plaintiff's Motion To Vacate is due to be denied and that Defendants' Cross–Motion For Summary Judgment And Motion To Confirm Arbitration Award are due to be GRANTED.

## I. STANDARDS OF REVIEW

### A. *The Standard for Reviewing an Arbitration Award*

■ The court's review of an arbitrator's decision is governed by the Federal Arbitration Act ("FAA"). *See* 9 U.S.C. §§ 1–16. "Judicial review of arbitration awards under the FAA is very limited." *Brown v. Rauscher Pierce Refsnes, Inc.,* 994 F.2d 775, 778 (11th Cir.1993). By statute, the court may vacate an arbitration award only on four grounds. *See* 9 U.S.C. § 10(a)(1)-(5). Those grounds are as follows:

(1) Where the award was procured by corruption, fraud, or undue means.

(2) Where there was evident partiality or corruption in the arbitrators, or either of them.

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed

---

1. When citing to certain pleadings in the record, the court will refer to the docket numbers assigned to those pleadings ("Doc.No.").

them that a mutual, final, and definite award upon the subject matter submitted was not made.

██ In addition to these four statutory grounds, case law has carved out three limited non-statutory bases for vacatur. These three bases are as follows: (1) the arbitration award is arbitrary and capricious; (2) enforcement of the arbitration award violates public policy; and (3) the arbitration award evinces a "manifest disregard for the law." *See Montes v. Shearson Lehman Bros., Inc.*, 128 F.3d 1456, 1458–62 (11th Cir.1997); *see also Scott v. Prudential Sec., Inc.*, 141 F.3d 1007, 1017 (11th Cir.1998). The party challenging the arbitration award "bears the burden of setting forth sufficient grounds to vacate the arbitration award." *Scott*, 141 F.3d at 1014.

██ The FAA "expresses a presumption that arbitration awards will be confirmed." *Booth v. Hume Publ'g, Inc.*, 902 F.2d 925, 932 (11th Cir.1990). Thus, the burden on the party seeking to vacate an arbitration award is very heavy. *See O.R. Sec., Inc. v. Professional Planning Assoc.*, 857 F.2d 742, 748 (11th Cir.1988); *see also Amicizia Societa Navegazione v. Chilean Nitrate and Iodine Sales Corp.*, 274 F.2d 805, 808 (2d Cir.1960) ("[T]he court's function in confirming or vacating an arbitration award is severely limited. If it were otherwise, the ostensible purpose for resort to arbitration, i.e., avoidance of litigation, would be frustrated."). Additionally, "the district court need not conduct a full hearing on a motion to vacate or confirm; such motions may be decided on the papers without oral testimony."[2] *Booth*, 902 F.2d at 932.

### B. *Standard for Reviewing a Motion for Summary Judgment*

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing FED. R. CIV. P. 56(c)).

The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of

---

**2.** After reviewing the pleadings and evidentiary submissions of Plaintiff and Defendants, the court finds that the Parties' Motions may properly be resolved on the merits without an evidentiary hearing. The Parties have fully briefed the issues, and have had an opportunity to file evidence.

'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548 (citing FED. R. CIV. P. 56(c)). The mechanics of satisfying the initial burden vary, however, depending upon which party, the movant or the nonmovant, bears the burden of proof at trial. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993) (detailing the nature of the parties' responsibilities when preparing or defending against a motion for summary judgment).

Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (citing FED. R. CIV. P. 56(e)). In meeting this burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." FED. R. CIV. P. 56(e); *see also Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348; *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

## II. PROCEDURAL HISTORY AND FACTS

Plaintiff, a black male, was employed by Lanier from April 19, 1994, to June 25, 1996. (Doc. No. 44 at 3, 4–5.) Lanier hired Plaintiff to work as a facsimile and copier machine sales representative in Lanier's Montgomery, Alabama, sales' office. (Doc. No. 15, at 2.)

When Plaintiff began his employment with Lanier, Plaintiff signed an Employment Agreement, which contained an arbitration clause. (Doc. No. 15, Defs.' Ex. 1.[3]) The typed three-page Employment Agreement sets forth twelve sections. (*Id.*) The arbitration clause is embodied in Section 8 and reads as follows:

> If a dispute arises out of or relates to this Agreement or the breach, termination, or validity thereof, or the compensation, promotion, demotion, discipline, discharge or terms and conditions of employment of the Employee, and if said dispute cannot be settled through direct discussion, the parties agree to settle the dispute by binding arbitration in accordance with the Employment Dispute Resolution Rules of the American Arbitration Association in effect on the date of this Agreement, and judgment upon the award rendered by the arbitrator(s) may be entered by any court having jurisdiction thereof; provided, however, that this Section shall not apply to claims or disputes involving the breach or alleged breach by Employee of any obligation set forth in Section 5 of this Agreement. Disputes involving the unauthorized use or disclosure of Trade Secrets or Confidential Information, or involving or concerning unfair competition or the non-compete provisions of this Agreement, shall be settled by any court having jurisdiction thereof and shall not be decided by arbitration pursuant to this Section unless the Employee and the Company expressly agree otherwise in writing.

(*Id.*) In the left-hand margin by Section 8 are two lines for the employee and district manager to sign. Plaintiff placed his ini-

---

**3.** The Employment Agreement also is included as Exhibit 3 in Plaintiff's exhibits accompanying Plaintiff's Memorandum Brief In Response To Defendants' Motion For Summary Judgment (Doc. No. 45).

tials by Section 8, signed the Employment Agreement, and dated it April 19, 1994.

At different times during Plaintiff's employment, his superiors were Brandsma, the sales supervisor, and Deweese, the district manager. (*Id.* at 3; Compl. ¶¶ 6–7.) Brandsma and Deweese are both white males. Plaintiff asserts that Deweese and Brandsma "singled out" Plaintiff and discriminated against him based on his race. (Doc. No. 44 at 3.) Ultimately, on June 25, 1996, Plaintiff asserts that Lanier fired him based upon his race and in retaliation for Plaintiff filing charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* at 3–5.)

On November 1, 1996, counsel for Plaintiff sent a letter to Lanier's counsel requesting arbitration, the first paragraph which reads as follows:

> This law firm represents our client, Ron Mays, in initiating an arbitration against Lanier Worldwide, Inc.. [sic] The above named claimant is a party to an arbitration agreement contained in a written contract, dated April 19, 1994, which provides for arbitration under the Commercial Arbitration Rules of the American Arbitration Association. Therefore, Ron Mays, former employee and party to the arbitration agreement, hereby registers a "demand for arbitration."

(Doc. No. 15, Defs.' Ex. 2.) In the second paragraph, counsel for Plaintiff describes the "nature of the dispute" as "aris[ing] out of a race discrimination claim in employment against Lanier." (*Id* .) Counsel for Plaintiff then details Plaintiff's claims, which include causes of action for discriminatory discharge, hostile work environment and retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e–17 ("Title VII"), "and/or" 42 U.S.C. § 1981 (" § 1981"). Further, counsel for Plaintiff writes in the concluding paragraph "that copies of our agreement and this demand are being filed with the American Arbitration Association at its Regional Office in Atlanta, Georgia, with a request that it

commence administration of the arbitration." (*Id.*)

The arbitration was conducted by Floyd C. Hale. The Parties engaged in pre-hearing discovery. The hearings before the arbitrator consumed nine days between March 26, 1997 and May 23, 1997, at which more than 30 witnesses testified. (Doc. No. 28, Defs.' Ex. B, ¶¶ 2, 4.) Plaintiff's claims, which he argued before the arbitrator, arose from the three charges of discrimination Plaintiff filed with the EEOC. (*Id.*, Defs.' Ex. B, ¶ 12.) In his first charge, dated December 5, 1996, Plaintiff alleged in general terms that "Lanier treated white employees more favorably than it treated him in similar situations because of his race." (Doc. No. 28, Defs.' Ex. B, ¶ 13; Doc. No. 44 at 5.) As grounds for this charge, Plaintiff asserted that Lanier treated him differently from white employees by

> (1) denying him the opportunity to receive reimbursement of tuition which he proposed to pay to attend law school, (2) denying him a commission for a sale made in his territory, (3) threatening to discipline or discharge him, (4) making offensive remarks to him, (5) hiring a less qualified Caucasian man to become a sales supervisor, and (6) reprimanding [Plaintiff] for conduct for which Caucasian employees were not reprimanded.

(*Id.*) In his second EEOC charge, dated June 19, 1996, Plaintiff contended that Lanier retaliated against him because he filed the aforementioned charge of discrimination against Lanier. (*Id.* ¶ 14; Doc. No. 44 at 5.) Specifically, Plaintiff argued that Lanier retaliated against him "by (1) reducing the size of his territory, (2) reprimanding him for low productivity and for wearing improper attire while working, and (3) threatening to suspend him without pay unless he signed a 'standards of business conduct' form by 5:00 p.m. on May 31, 1996." (Doc. No. 28, Defs.' Ex. B, ¶ 14 (citation omitted).)

Plaintiff's third EEOC charge, dated June 27, 1996, also alleged a retaliation

charge. Plaintiff asserted that, in further retaliation of Plaintiff filing EEOC charges, Lanier fired Plaintiff. (*Id.,* ¶ 15.)

In addition to raising the claims set out in his three EEOC charges, Plaintiff also presented to the arbitrator allegations of a hostile work environment and evidence that Brandsma and Deweese treated him differently than white employees. (*Id.,* ¶¶ 18–19 .)

▇ After the hearings, in an Opinion dated August 28, 1997, the arbitrator ruled in favor of Lanier on Plaintiff's claims "involv[ing] allegations of Title VII ... and § 1981." (Doc. No. 28, Defs.' Ex. B, ¶ 1.) In his Opinion, the arbitrator analyzed Plaintiff's employment discrimination claims under the burden-shifting analysis used in employment discrimination cases and articulated in *McDonnell Douglas Corp. v. Green* and *Texas Dep't of Community Affairs v. Burdine.*[4] *See* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207. (Doc. No. 28, Defs.' Ex. B, ¶¶ 20–43.)

▇ Under the *McDonnell Douglas/Burdine* framework, the arbitrator first found that Plaintiff established a prima facie case of discrimination on each of his claims. (Doc. No. 28, Defs.' Ex. B, ¶ 23); *see Batey v. Stone,* 24 F.3d 1330, 1333 (11th Cir.1994). Second, the arbitrator concluded that Lanier met its burden of demonstrating a legitimate, non-discriminatory reason for each of Plaintiff's challenged employment decisions, including Plaintiff's termination. (Doc. No. 28, Defs.' Ex. B, ¶ 27); *see Meeks v. Computer Associates Intern.,* 15 F.3d 1013, 1021 (11th Cir.1994). Third, the arbitrator proceeded to determine "the ultimate factual issue ...: Did [Lanier] intentionally discriminate against [Plaintiff] because of his race or because he filed a charge of discrimination with the Equal Employment Opportunity Commission?"[5] (Doc. No. 28, Defs.' Ex. B, ¶ 29, citing *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983)).

> The arbitrator concluded that Plaintiff
>
> failed to prove, by a preponderance of the evidence in this case, that the reasons offered by Lanier for the challenged decisions or actions which it took were a mere pretexts [sic] for discrimination.... Lanier's explanations and justifications for each of [Plaintiff's] challenged decisions and actions are extensively explained in its post-hearing brief, which contains detailed references to the supporting evidence in the record.

(Doc. No. 28, Defs.' Ex. B, ¶ 31.) The arbitrator continued:

> If I had been Mr. Mays' manager, I might not have made the challenged decisions or taken the challenged actions.

(quoting *Tipton v. Canadian Imperial Bank of Commerce,* 872 F.2d 1491, 1495 (11th Cir. 1989)). If the employer satisfies its burden, the plaintiff then bears the ultimate burden of proving that the employer's proffered reasons are pretextual. *See Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir.1997).

**4.** Courts apply the *McDonnell Douglas/Burdine* framework when a plaintiff seeks to prove his or her claims through circumstantial, rather than direct, evidence. In the arbitration proceedings, Plaintiff contended that he had presented direct evidence. However, the arbitrator rejected Plaintiff's argument. (Doc. No. 28, Defs.' Ex. B., ¶ 50.)

Under the *McDonnell Douglas/Burdine* burden-shifting analysis, a plaintiff bears the initial burden of raising an inference of discrimination by establishing a prima facie case. *See Batey v. Stone,* 24 F.3d 1330, 1333 (11th Cir. 1994). Once a plaintiff establishes a prima facie case, the burden shifts to the employer who must offer a legitimate, non-discriminatory reason for its adverse employment decision. *See Meeks v. Computer Associates Intern.,* 15 F.3d 1013, 1021 (11th Cir.1994)

**5.** "If an employer succeeds in carrying its intermediate burden of production, the *McDonnell Douglas/Burdine* framework, with its presumptions and burdens, drops out of the case, and the trier of fact proceeds to decide the ultimate issue in the case: whether plaintiff has proven that the employer intentionally discriminated against him because of his race." *See Turnes v. AmSouth Bank, N.A.,* 36 F.3d 1057, 1061 (11th Cir.1994); (Doc. No. 28, Defs.' Ex. B, ¶ 28.)

I may disagree with the reasonableness or fairness of some of them or how they were implemented, but I have no authority to grant relief for them unless I find that they were motivated by unlawful discrimination.

Based on all of the evidence in the record of this case, I do not find that any of the challenged decisions and actions were motivated by unlawful discrimination.

(*Id.*, ¶¶ 32–33.)

The arbitrator then discussed "some of the evidence which [he] considered" in reaching his conclusions. (*Id.*, ¶ 33.) For example, on Plaintiff's hostile work environment claim, the arbitrator found, in part, that Plaintiff's evidence, if "fully credited and given full weight," does not demonstrate "[a] workplace so permeated with racially discriminatory intimidation, ridicule, and insult so severe or pervasive that it altered the conditions of [Plaintiff's] employment and created an abusive working environment." (*Id.*, ¶ 41.) The arbitrator stated that Plaintiff's "evidence does show the occasional utterance of epithets which reasonably engendered offensive feelings in [Plaintiff], but, as the United States Supreme Court said, such utterance 'does not sufficiently affect the conditions of employment to implicate Title VII.'" (Doc. No. 28, Defs.' Ex. B, ¶ 42) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

On September 30, 1997, Plaintiff commenced this action by filing a Complaint in the United States District Court for the Middle District of Alabama. Therein, Plaintiff seeks relief from Lanier, Brandsma and Deweese for alleged racial discrimination, in violation of § 1981. Plaintiff raises substantially the same allegations that he submitted before the arbitrator. At the same time, Plaintiff filed the instant Motion To Vacate The Arbitration Award Or, In The Alternative, Motion For De Novo Review. (Doc. No. 2.) Defendants responded by filing a Cross-Motion For Summary Judgment And Motion To Con-

firm Arbitration Award on November 19, 1997. (Doc. No. 15.)

## III. DISCUSSION

In moving the court to vacate the arbitration award, Plaintiff's challenges are twofold. First, Plaintiff disputes the validity of the arbitration clause in his Employment Agreement. Plaintiff asserts that the arbitration clause in his Employment Agreement is not enforceable and that, therefore, he should never have been required in the first place to submit his employment discrimination claims to arbitration. Specifically, Plaintiff contends that the arbitration agreement is unenforceable for the following reasons: (1) Lanier cannot compel Plaintiff, as a condition of employment, to waive his right to bring a § 1981 lawsuit in federal court; such "take it or leave it" contracts are "contract[s] of adhesion," are "procedurally unconscionable," and cannot constitute a waiver of an aggrieved employee's right to bring a federal statutory claim (Doc. No. 44 at 8–12); (2) Plaintiff was required to pay exorbitant fees, including a $3500 filing fee, which render the arbitration clause in Plaintiff's Employment Agreement unenforceable under the holding in *Randolph v. Green Tree Financial Corp.*, 178 F.3d 1149 (11th Cir.1999) (Doc. No. 58 at 1–3); and (3) the arbitration clause is "voidable" because Lanier fraudulently induced Plaintiff to sign the Employment Agreement. (Doc. No. 55 at 1.)

Second and alternatively, Plaintiff challenges the propriety of the arbitrator's decision. In other words, Plaintiff argues that, if the court finds that the arbitration clause is enforceable against Plaintiff, then the arbitration award is due to be vacated on grounds enumerated in 9 U.S.C. § 10 and on non-statutory grounds.

In responding to Plaintiff's arguments, Defendants ask the court to deny Plaintiff's Motion To Vacate, to enter summary judgment in their favor and to confirm the arbitrator's award. (Doc. No. 15 at 2 .) As to Plaintiff's first contention that the arbi-

tration clause is not enforceable, Defendants raise several grounds. Among these grounds, Defendants assert that, based upon Plaintiff's voluntary participation in the arbitration proceedings, Plaintiff has waived his right to challenge the validity of the arbitration clause in this subsequent lawsuit. As to Plaintiff's second argument, Defendants assert that Plaintiff has not set forth sufficient grounds for vacating the arbitration award.

For the reasons to follow, the court agrees with Defendants that, by his voluntary initiation of and participation in the arbitration proceedings, Plaintiff has waived his right to contest the validity of the arbitration clause. Further, the court finds that Plaintiff has not demonstrated sufficient grounds to vacate the arbitration award and that, therefore, the arbitration award is due to be confirmed.

First, the court will address Plaintiff's challenge to the enforceability of the arbitration clause. Second, the court will examine Plaintiff's arguments in support of his contention that the court must vacate the arbitration agreement.

### A. Enforceability of the Arbitration Clause in Plaintiff's Employment Agreement

As stated, Defendants argue that, because Plaintiff submitted his dispute to arbitration without first challenging the enforceability of the arbitration agreement, he is now bound by the arbitrator's decision. Specifically, Defendants assert that, based on principles of waiver and estoppel, Plaintiff is precluded "from challenging the arbitrability of his claims because (1) his attorneys affirmatively invoked arbitration in a letter sent to [Lanier] on November 1, 1996 ... and (2) failed to challenge the arbitrability of this matter until two months after the Arbitrator rendered his decision ...." (Doc. No. 48, at 4; Doc. 15 at 12–15.) In support of their argument, Defendants rely, in part, on *Piggly Wiggly Operators'*

*Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers Union, Local No. 1,* 611 F.2d 580 (5th Cir.1980),[6] and *Nghiem v. NEC Electronic, Inc.,* 25 F.3d 1437 (9th Cir.1994). Based on these two cases, Defendants assert that "courts have uniformly held that to the extent a party is entitled to challenge the validity of an agreement to arbitrate, the time to raise that issue is before the matter goes to arbitration, not after." (Doc. No. 15 at 12–13.) "Otherwise, a party could hold back, await the outcome of the arbitration, and then blithely render it null simply by challenging the validity of the proceedings." (*Id.* at 13.) Thus, according to Defendants, "the failure to challenge arbitrability in a timely fashion and subsequent participation in the arbitration proceedings will result in the waiver of the right to object to the fact of the proceedings." (*Id.*) For the following reasons, the court agrees with Defendants.

In *Piggly Wiggly,* which involved a dispute over a provision in a collective bargaining agreement, one of the issues before the Court was whether the employer could question the jurisdiction of the arbitrator after the employer had voluntarily submitted an issue to arbitration. 611 F.2d at 584. There, a union employee worked as an "over-the-road" truck driver for the employer. *See id.* at 581. The employer fired the employee pursuant to a provision in the collective bargaining agreement ("Section z"), which allowed for immediate termination of employees who became "uninsurable by any of the [employer's] insurance carriers." *Id.* The employee's union filed a grievance, asserting, in part, that Section z was "not a valid term" of the collective bargaining agreement. *Id.* at 582. Unable to resolve the dispute through the internal grievance process, the union and the employer submitted the grievance to arbitration. *See id.* Agreeing with the union that Section z

---

**6.** In *Bonner v. City of Prichard,* the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981. *See* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

was invalid, the arbitrator ordered the employee reinstated. *See id.*

The employer then went to court, seeking to vacate the award on the ground that, in determining the invalidity of Section z, the arbitrator "exceeded his authority by modifying" the scope of the collective bargaining agreement. *See id.* The Fifth Circuit refused to reach this issue. Instead, the Fifth Circuit held that, since the employer had agreed to arbitrate the validity of Section z, it was foreclosed from now contesting the arbitrator's authority to decide the question. The Fifth Circuit explained as follows:

> In this case, neither party questioned the arbitrability either of the dispute stated in the grievance or of the issues set forth in it; the entire grievance was presented to the arbitrator without reservation. It was only after [the arbitrator] had decided the Article 21(z) [i.e., Section z] issue adversely to the employer that it sought to raise the question of his jurisdiction. In *International Brotherhood of Teamsters v. Washington Employers, Inc.,* 557 F.2d 1345, 1350 (9th Cir.1977), the court found in similar circumstances that, by submitting an issue to arbitration, the employer had waived any objection to the arbitrator's jurisdiction. **Whether in technical legal terms the surrender of the possible argument that a certain dispute is not covered by the promise to arbitrate should be considered a waiver is not of present moment. On whatever basis it rests, waiver, estoppel or new contract, the result is that the grievance submitted to the arbiter defines his authority without regard to whether the parties had a prior legal obligation to submit the dispute.**
>
> It is, therefore, irrelevant to our decision whether the company might properly have refused to submit to the arbitrator the validity of Article 21(z).

*Id.* at 584–85 (brackets and emphasis supplied).

In *Nghiem,* the second case relied on by Defendants, the plaintiff, Peter Nghiem ("Nghiem") was fired by his employer. 25 F.3d at 1439. As a result, Nghiem followed the four-step arbitration process set out in the employer's company handbook, the final step which was "'final and binding arbitration.'" *Id.* While binding arbitration was not a condition in Nghiem's employment contract, Nghiem stated that "he felt compelled" to use the four-step process in the company handbook "because the language of the handbook said that this was the only process for resolving employee complaints." *Id.* at 1439. After hearings and the submission of briefs and evidence, the arbitrator ruled against the employee.

However, before the arbitrator rendered her decision on Nghiem's grievance, Nghiem filed a court action alleging the same claims he raised before the arbitrator. Those claims were "wrongful termination, race discrimination, and an antitrust violation." *Id.* at 1439. In his lawsuit, Nghiem argued that he was not required to submit his grievance to arbitration and, therefore, was not bound by the arbitrator's decision. *See id.* at 1439. Nghiem asserted that he was under no contractual obligation to submit to arbitration and that, therefore, at most, arbitration was binding against only his employer, but not against him. *See id.*

In analyzing Nghiem's arguments, the Ninth Circuit applied its circuit's "'rule that a party may not submit a claim to arbitration and then challenge the authority of the arbitrator to act after receiving an unfavorable result.'" *Id.* at 1440 (quoting *Fortune, Alsweet & Eldridge, Inc. v. Daniel,* 724 F.2d 1355, 1356 (9th Cir. 1983)). The Ninth Circuit further explained that the *Daniel* rule applies even if the party "attempt[s] to deny the arbitrator's authority before a decision was issued." *Id.* at 1440; *see also Daniel,* 724 F.2d at 1357 ("It would be unreasonable and unjust to allow Daniel to challenge the legitimacy of the arbitration process, in which he had voluntarily participated over

a period of several months, shortly before the arbitrator announced her decision.").

Under *Daniel*, the Ninth Circuit rejected Nghiem's arguments and explained as follows: As in *Daniel*,

> Nghiem initiated the arbitration, attended the hearings with representation, presented evidence, and submitted a closing brief of fifty pages. Although he filed suit in state court before the arbitrator announced his final decision, that decision is still binding on Nghiem under *Daniel*. Once a claimant submits to the authority of the arbitrator and pursues arbitration, he cannot suddenly change his mind and assert lack of authority. Nghiem is bound by the arbitrator's decision.

*Id.* at 1439. Moreover, the *Nghiem* court cited this circuit's precedent in *Piggly Wiggly*, and held that "Nghiem's voluntary initiation of arbitration can be interpreted as waiver of any objection he may have had over the authority of the arbitrator." *Nghiem*, 25 F.3d at 1440 (citing *Piggly Wiggly*, 611 F.2d at 584).

■■■ The court agrees with Defendants that *Piggly Wiggly*, as binding precedent, and *Nghiem*, as persuasive authority, preclude Plaintiff from bringing a lawsuit in court.[7] The court reaches this conclusion for the following reasons. First, the court finds that the record demonstrates that Plaintiff voluntarily initiated binding arbitration. In November 1996, Plaintiff affirmatively invoked Lanier's arbitration process in a letter to Lanier, which was written by Plaintiff's counsel. Therein, counsel for Plaintiff represents that Plaintiff, a "former employee and party to the arbitration agreement, hereby registers a 'demand for arbitration.'" (Doc. No. 15, Defs.' Ex. 2.) The letter specifically describes Plaintiff's claims as discrimination and retaliation claims arising under Title VII and § 1981. (*Id.*) There is nothing in this letter that demonstrates anything other than a clear intent by Plaintiff to

voluntarily arbitrate his federal statutorily-based employment claims.

Second, the voluntary nature of Plaintiff's submission to the arbitrator is further substantiated by Plaintiff's active participation in the full arbitration proceedings. He attended the nine days of hearings and, through his counsel, conducted discovery, examined and cross-examined witnesses, and filed a post-trial brief in support of his position. Never once, the court finds, did Plaintiff challenge the jurisdiction of the arbitrator to hear his dispute or assert that the arbitrator did not have the authority to decide the employment discrimination issues before him.

Plaintiff, however, contends that, during the hearings, he objected to the arbitration proceedings and that this objection is sufficient to overcome an argument of waiver. For instance, Plaintiff points to the following statement made by his counsel to the arbitrator at the hearings: "[W]e would rather have had the opportunity, with all due respect to you, to have a chance to go to Federal Court on this, but this is an arbitration agreement that was imposed upon [Plaintiff] as an employee when he came in." (Doc. No. 3, Ex. 21.) The court disagrees with Plaintiff for two reasons.

■■■ First, by informing the arbitrator that Plaintiff preferred to litigate in federal court, the court finds that counsel for Plaintiff did not preserve in this court a challenge to the jurisdiction of the arbitrator. Pursuant to the provisions of the FAA, "the proper procedure for a party to challenge whether it is subject to an arbitration agreement is to move the court for a stay of arbitration." *Halley Optical Corp. v. Jagar Int'l Mktg. Corp.*, 752 F.Supp. 638, 639 (S.D.N.Y.1990) (citing *Smiga v. Dean Witter Reynolds, Inc.*, 766 F.2d 698, 704 (2d Cir.1985) (holding that the plaintiff, who failed to raise absence of an agreement to arbitrate in a motion to stay arbitration, waived that objection)).

---

7. *See also International Longshoremen's Assoc., AFL–CIO v. West Gulf Maritime Assoc.*, 594 F.Supp. 670, 674 (S.D.N.Y.1984) ("One who voluntarily participates in arbitration will not thereafter be heard to complain that the arbitrator was without authority to act.").

In *Halley,* similar to this case, the plaintiff brought a lawsuit in federal court after receiving an unfavorable award in arbitration proceedings. The court found that, because the respondent had merely raised the issue of jurisdiction before the arbitrator, but had never sought a stay of arbitration in court, he had waived any objection to the arbitrator's jurisdiction to decide the dispute. "To find otherwise would allow a party to participate in an arbitration, with the assurance that if it loses it may later challenge whether it had ever agreed to arbitration. Such a result is contrary to the clear policy favoring arbitration."[8] *Id.* at 639–40.

Here, Plaintiff did not seek a stay in federal court. Rather, Plaintiff vigorously prosecuted his claims in the arbitration proceedings. Now, having lost in arbitration, Plaintiff seeks a second chance in court. Based upon the foregoing authority, this he cannot do. In other words, Plaintiff cannot have his cake and eat it too. *See* Heywood, *Proverbs,* Part II, Chap. IX. In sum, in light of Plaintiff's course of conduct, the court finds that Plaintiff is barred from claiming unenforceability of the arbitration clause. *Compare National Wrecking Co. v. International Brotherhood of Teamsters, Local 731,* 990 F.2d 957, 960 (7th Cir.1993) ("Parties ... cannot stand by during arbitration withholding certain arguments, then, upon losing the arbitration, raise such arguments in federal court. [The court] will not tolerate such sandbagging.").

Second, and alternatively, even if short of seeking a stay, a party need only voice an objection to the arbitrator's jurisdiction during the arbitration proceedings to preserve it for consideration by a court, the court finds that Plaintiff failed to do so. *See Avis Rent A Car System, Inc. v. Garage Employees Union,* 791 F.2d 22, 26 (2d Cir.1986) (stating that a party participating in an arbitration proceeding was only required to make its objection to the arbitration procedure during the arbitration proceedings: "We cannot say that [the appellant] was required to do more to preserve its objection."); *see also New York Hotel and Motel Trades Council, AFL–CIO v. Hotel Nikko of New York, Inc.,* 1991 WL 168284 (S.D.N.Y. Aug.22, 1991) (citing *Avis* and finding that, during the arbitration proceedings, the plaintiff did not "explicitly preserve[ ] its objection to jurisdiction" before the arbitrator); *Compare* FED. R. EVID. 103 (barring any appeal predicated on a ruling admitting evidence which is not the subject of a timely, specific ground of objection stated in the record).

Based upon the foregoing authority, at the very least, a specific objection is necessary in order to entitle the objector to raise the issue in a court after the conclusion of an arbitration proceeding. The record indicates that counsel for Plaintiff did not make a specific objection. Rather, counsel for Plaintiff's statement is nothing more than a comment concerning Plaintiff's preference to proceed in federal court. The statement contains no explicit

---

**8.** *See also Comprehensive Accounting Corporation v. Rudell,* 760 F.2d 138 (7th Cir.1985). In *Comprehensive Accounting,* the respondents, who had entered into a contract which contained an arbitration clause, refused to participate in arbitration proceedings. *Id.* at 139. The respondents did not challenge the arbitrator's jurisdiction until after the arbitrator had entered an award against them when the petitioner moved a federal court to confirm the arbitration award, pursuant to 9 U.S.C. § 9. *See id.* The Seventh Circuit rejected respondents' challenge to the arbitration award:

> No one should be forced into arbitration without an opportunity to show that he never agreed to arbitrate the dispute that is the subject of the arbitration. [Respondents] had that opportunity when they were notified of the arbitration, and they let it pass by. It was then too late for them to sit back and allow the arbitration to go forward, and only after it was all done, and enforcement was sought, say: oh by the way, we never agreed to the arbitration clause. That is a tactic that the law of arbitration, with its commitment to speed, will not tolerate.

*Id.* at 140.

opposition by counsel to Plaintiff proceeding before the arbitrator. Importantly, counsel for Plaintiff's statement sets forth no challenge to the arbitrator's authority and jurisdiction to hear the dispute. In sum, what Plaintiff claims to be an explicit preservation fails to convince the court that Plaintiff objected to the arbitrator's jurisdiction.

Further, Plaintiff argues that, under any circumstance, he cannot be forced by Lanier to waive his right to seek redress in federal court for a violation of "his constitutional and statutory civil rights." (Doc. No. 22.) It may well be that, upon proper challenge, the arbitration clause in Plaintiff's Employment Agreement is not enforceable.[9] Plaintiff, however, misses the point. Based on principles of waiver and estoppel, Plaintiff can no longer complain that he should not have been required to arbitrate his employment discrimination claims. Thus, the court never reaches Plaintiff's substantive arguments as to the enforceability of the arbitration clause. *See, e.g., Executone Information Systems,* *Inc. v. Davis,* 26 F.3d 1314, 1323 (5th Cir.1994) (stating that "the parties agreed to allow the arbitrator to decide the issue of 'Alleged loss of contracts due to equipment shortages and deficiencies'" and, because they had done so, "it [was] irrelevant to [the court's] decision whether [the manufacturer] might have properly objected to the submission of the issue on the grounds of non-arbitrability") (citing *Piggly Wiggly,* 611 F.2d at 584–85). In other words, because Plaintiff submitted his claims to arbitration without objection, he has waived his right to object to the jurisdiction of the arbitrator. Thus, it matters not, for purposes of deciding this case, whether an employer can compel a plaintiff, as a condition of employment, to waive his right to bring an employment discrimination lawsuit in federal court[10] (Doc. No. 44 at 8–12), whether the payment of the $3,500 filing fee and other fees means that the cost of arbitration renders invalid enforcement of the arbitration clause, *see Randolph,* 178 F.3d at 1149, (Doc. No. 58 at 1–3), or whether the arbitration clause

9. Indeed, had Plaintiff not waived such an attack (i.e., had Plaintiff challenged the enforceability of the arbitration clause prior to his voluntary submission to arbitration), the court would have considered, in part, the enforceability of the arbitration clause in light of the Eleventh Circuit's well-reasoned opinion in *Randolph v. Green Tree Financial Corp.,* 178 F.3d 1149 (11th Cir.1999). In *Randolph,* the Eleventh Circuit held that an arbitration clause in a consumer loan document was unenforceable because the clause failed to "provide the minimum guarantees required to ensure that [the plaintiff's] ability to vindicate her statutory rights will not be undone by steep filing fees, steep arbitrators' fees, or other high costs of arbitration." *Id.* at 1157, 1158. In reaching this conclusion, the Eleventh Circuit concluded that the arbitration clause defeated the remedial purposes of the Truth in Lending Act because the arbitration clause

> says nothing about the payment of filing fees or the apportionment of the costs of arbitration. It neither assigns an initial responsibility for filing fees or arbitrators' costs, nor provides for a waiver in cases of financial hardship. It does not say whether consumers, if they prevail, will nonetheless be saddled with fees and costs in excess of any award. It does not say whether the

rules of the American Arbitration Association, which provide at least some guidelines concerning filing fees and arbitration costs, apply to the proceeding, whether some other set of rules applies, or whether the parties must negotiate their own set of rules. *Id.* at 1158. Thus, the Court was given no real assurance that the plaintiff would not be "saddled with a prohibitive costs order." *Id.* The *Randolph* court found support for its decision from its holding in prior precedent "that forcing a plaintiff to bear the brunt of 'hefty' arbitration costs and 'steep filing fees' constitutes 'a legitimate basis for a conclusion that the [arbitration] clause does not comport with statutory policy.'" *Id.* at 1157 (quoting *Paladino v. Avnet Computer Technologies, Inc.,* 134 F.3d 1054, 1062 (11th Cir.1998)).

10. *Compare Duffield v. Robertson Stephens & Co.,* 144 F.3d 1182, 1185 (9th Cir.1998) (in holding that "employers may not by such means compel individuals to waive their Title VII right to a judicial forum," the court noted that "[w]e do not in this opinion consider the enforceability of an arbitration award in instances in which an employee has submitted the dispute to arbitration without challenging the enforceability of the arbitration agreement.") (citing *Nghiem,* 25 F.3d at 1437).

is "voidable" because Lanier allegedly fraudulently induced Plaintiff to sign the Employment Agreement. (Doc. No. 55 at 1.)

In sum, the court finds that, contrary to Plaintiff's assertions, Plaintiff was not "forced against his will to arbitrate his proceeding." (Doc. No. 44 at 46–47.) Rather, the court finds that Plaintiff voluntarily commenced and participated in the arbitration proceedings, and, thus, it is too late now for Plaintiff to challenge the arbitrator's jurisdiction. Accordingly, the court finds that Plaintiff's Motion To Vacate on the ground that the arbitration clause is unenforceable is due to be denied.

### B. *Plaintiff's Grounds for Vacating the Arbitration Award*

Plaintiff urges the court to vacate the arbitration award on the following four grounds: (1) the arbitration award is arbitrary and capricious, *see Scott,* 141 F.3d at 1017; (2) the arbitrator exceeded his powers or "so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made," *see* 9 U.S.C. § 10(a)(4); (3) the arbitration award contravenes public policy, *see Scott,* 141 F.3d at 1017; and (4) the arbitration award was procured through either fraud or bias on the part of the arbitrator. *See* 9 U.S.C. § 10(a)(1) and (2). (Doc. No. 3 at 2, 26–28.)

▬ Before addressing each of Plaintiff's arguments, the court emphasizes that, when examining the statutory and non-statutory grounds proffered by Plaintiff in support of vacating the arbitration award, the court does not conduct a de novo review of whether Defendants violated federal employment discrimination laws. *See Griffin Indus., Inc. v. Petrojam Ltd.,* 58 F.Supp.2d 212, 221 (S.D.N.Y.1999) (stating that de novo review of an arbitration award is inappropriate); *see also Nitram, Inc. v. Industrial Risk Insurers,* 848 F.Supp. 162, 167 (M.D.Fla.1994) ("Judicial review of arbitration awards is extremely narrow."). Rather, the court is limited to applying the standards created under the FAA, and case law, as discussed in Section

*IA, supra,* in order to determine whether the remedy of vacating the arbitration award is appropriate.

With this caveat in mind, the court turns to Plaintiff's four arguments in support of vacating the arbitration award. For the reasons stated below, the court concludes that none of Plaintiff's arguments provide a basis upon which the arbitration award may be vacated.

### (1) Arbitrary and Capricious

Plaintiff urges the court to find that the arbitrator's award was arbitrary and capricious, arguing that the arbitrator "totally ignore[d] much favorable evidence proving that [Plaintiff] was a victim of race discrimination." (Doc. No. 3, at 3.) Therefore, Plaintiff contends that the arbitrator's award has no basis in evidence. (*Id.*) Further, Plaintiff asserts that the arbitration award against Plaintiff "does not and can not [sic], be inferred from the facts of the case." (*Id.* at 2.) The court cannot agree.

▬ The Eleventh Circuit in *Lifecare Intern., Inc. v. CD Medical, Inc.,* explained the stringent standard a challenging party must satisfy to show that an arbitration award is arbitrary and capricious:

An award is arbitrary and capricious "only if 'a ground for the arbitrator's decision cannot be inferred from the facts of the case.'" *Ainsworth v. Skurnick,* 960 F.2d 939, 941 (11th Cir.1992) (quoting *Raiford,* 903 F.2d at 1413), *cert. denied,* 507 U.S. 915, 113 S.Ct. 1269, 122 L.Ed.2d 665 ... (1993). This is, however, a very difficult standard for the party contesting the arbitration award to overcome. Indeed, the award is presumptively correct, *Sullivan, Long & Hagerty, Inc. v. Local 559,* 980 F.2d 1424, 1427 (11th Cir.1993), and will be vacated only if there is no ground whatsoever for the Panel's decision. *Brown,* 994 F.2d at 781. Furthermore, "[f]or an award to be vacated as arbitrary and capricious, the Panel's award must contain more

**1346**

than an error of law or interpretation."
*Id.*

68 F.3d 429, 435 (11th Cir.1995).

 Applying the foregoing principles, for the court to vacate the arbitration award, it must find that there is no basis for the arbitrator's decision. Here, the arbitrator set forth detailed reasons for his decision. The court has carefully reviewed the arbitrator's 14–page, single-spaced Opinion, as well as the entire record, and finds that the Opinion is well supported in its factual and legal conclusions.

The arbitrator, in this case, concluded that Plaintiff had failed to demonstrate that more likely than not Lanier's actions were the result of racial discrimination, racial harassment, and/or unlawful retaliation. (Doc. No. 28, Defs.' Ex. B, ¶¶ 31, 43, 60–65); *see St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The arbitrator found that Plaintiff failed to meet his burden because he was unable to show by a preponderance of the evidence that unlawful discrimination and retaliation were what motivated the challenged employment actions. Further, the arbitrator found that the various comments alleged to have been made by Brandsma and Deweese either were not made, were not probative, or raised no more than a suspicion of discrimination. (Doc. No. 52, 54, 59.) The court finds that the record amply supports the findings and conclusions of the arbitrator. In other words, his decision was not so palpably faulty that no judge could have arrived at the same ruling. *See Safeway Stores v. American Bakery and Confectionery Workers Intern. Union, Local 111,* 390 F.2d 79, 82 (5th Cir.1968).

Plaintiff takes great pains to list factual evidence, which he contends supports a finding that Plaintiff was the victim of intentional discrimination. The court emphasizes again that, under the arbitrary and capricious standard, the court is not involved in a de novo review of whether Defendants violated federal employment discrimination laws. Rather, the district court is limited to ascertaining whether

there exists any basis whatsoever for the arbitrator's decision. *See Lifecare,* 68 F.3d at 435. The court has carefully considered Plaintiff's arguments and factual assertions. The court, however, can infer grounds for the arbitrator's award from the facts of the case, and therefore, finds that Plaintiff has failed to meet his "difficult standard" of demonstrating that the award was arbitrary and capricious. *Id.* Accordingly, Plaintiff cannot succeed on an argument that the arbitrator's award is arbitrary and capricious.

### (2) 9 U.S.C. § 10(a)(4)

Plaintiff also asserts that, because the arbitrator "totally ignore[d] much favorable evidence," the award is due to be vacated under 9 U.S.C. § 10(a)(4). (Doc. No. 3, at 3.) Specifically, Plaintiff asserts that the arbitrator exceeded his powers or so imperfectly executed his powers because the arbitrator disregarded Plaintiff's evidence. For the following reasons, the court disagrees.

 Pursuant to 9 U.S.C. § 10(a)(4), a court may vacate an arbitration award where the challenging party demonstrates that the arbitrator exceeded his powers or "so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made." 9 U.S.C. § 10(a)(4). "In deciding whether the arbitrator exceeded its authority, [the court] resolve[s] all doubts in favor of arbitration." *Executone Info. Sys. v. Davis,* 26 F.3d 1314, 1320 (5th Cir.1994).

 The court has located no case authority, and Plaintiff has not cited any cases, establishing that an arbitrator's alleged disregard of alleged "much favorable evidence" is a ground for vacatur under 9 U.S.C. § 10(a)(4). (Doc. No. 3, at 3.) Indeed, "[f]actual or legal errors by arbitrators—even clear or gross errors—'do not authorize courts to annul awards.'" *Gingiss Int'l, Inc. v. Bormet,* 58 F.3d 328, 333 (7th Cir.1995) (quoting *Widell v. Wolf,* 43 F.3d 1150, 1151 (7th Cir.1994)); *see also Ainsworth v. Skurnick,* 960 F.2d 939 (11th

Cir.1992) ("[C]ourts are generally prohibited from vacating an award on the basis of errors of law or interpretation ...."). Rather than asserting a proper basis for vacating the arbitration award, Plaintiff's arguments "are nothing more than thinly veiled attempts to obtain appellate review of the arbitrator's decision, which is not permitted under the FAA." *Gingiss*, 58 F.3d at 333 (citing *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987)).

Moreover, to the extent that Plaintiff is alleging that the arbitrator manifestly disregarded the law, the court disagrees for the reasons discussed in Section III B(1), *supra. See Scott*, 141 F.3d at 1017 (recognizing "manifest disregard of the law" as one of "the non-statutory grounds that permit a district court to vacate an arbitration award"). A review of the record reveals that Plaintiff's arguments "suggest nothing more than a disagreement over the application of the law not its manifest disregard." *Id.* at 1017 n. 21; *see also Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1223 (11th Cir.2000) (" 'To manifestly disregard the law, one must be conscious of the law and deliberately ignore it.' ") (quoting *Montes v. Shearson Lehman Bros., Inc.*, 128 F.3d 1456, 1461 (11th Cir.1997)).

### (3) The Public Policy Exception

Relying on *Taylor v. Hudson Pulp and Paper Corp.*, 788 F.2d 1455 (11th Cir. 1986), and *Garner v. Giarrusso*, 571 F.2d 1330 (5th Cir.1978), Plaintiff argues that the arbitration award should be vacated as it is contrary to public policy. (Doc. No. 3 at 27–28.) Plaintiff cites these two cases for the general proposition that "public policy favors private litigation as a means of eradicating employment discrimination." (Doc. No. 3 at 28), citing *Garner*, 571 F.2d at 1337 (citing *Alexander v. Gardner–Denver*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974).); *see also Taylor*, 788 F.2d at 1462 ("Title VII states an important public policy of this nation."). According to Plaintiff, enforcement of the arbitrator's award violates this public policy because

Lanier did absolutely nothing to correct the discrimination occurring in its employment. Instead, Lanier and its legal department condoned the unlawful practices. The arbitration was thus not the proper place to litigate a person's individual and statutory rights. The proper place should have been with the federal courts.

(Doc. No. 3 at 28.) For the following reasons, the court disagrees with Plaintiff that he has stated a ground under the public policy exception for vacating the arbitration award.

In *Brown v. Rauscher Pierce Refsnes, Inc.*, the Eleventh Circuit set forth the following standard for determining whether an arbitration award violates public policy:

The public policy exception to the enforcement of arbitration awards allows courts to refuse to enforce arbitration awards where enforcement "would violate 'some explicit public policy' that is 'well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests.' " ... Typically, the public policy exception is implicated when enforcement of the arbitration award compels one of the parties to take action which directly conflicts with public policy.

994 F.2d 775, 782 (11th Cir.1993) (internal citations omitted).

Here, the court finds that the public policy exception is not applicable because enforcement of the arbitration award does not require Plaintiff "to take action which conflicts with public policy." *Id.* First, as discussed, *supra*, in Section III.A, Plaintiff waived his right to challenge the jurisdiction of the arbitrator to decide his employment discrimination suit based on his voluntary initiation of and participation in the arbitration proceedings. Accordingly, Plaintiff cannot argue that enforcement of the arbitration award *forces* Plaintiff to litigate in an arbitration forum, rather than in federal court. That

voluntary decision to arbitrate was made by him, and there is no public policy that says a Plaintiff by his voluntary acts in arbitration cannot waive his right to bring a subsequent federal lawsuit. In fact, the law in *Piggly Wiggly* and *Nghiem,* discussed *supra,* concludes the opposite.[11]

Second, to the extent Plaintiff argues that the evidence establishes unlawful discrimination on the part of Lanier and its supervisory employees and that public policy condemns employment discrimination in the workplace, the court finds that this public policy argument amounts only to Plaintiff's disagreement with the arbitrator's conclusions and application of the law. However, as emphasized in *Brown,* even assuming *arguendo* that the arbitrator erroneously applied the law to the facts, a court "may not set aside an arbitration award because the [arbitrator] erred in [his or her] interpretation of the law." 994 F.2d at 782. Accordingly, the court finds that Plaintiff's public policy arguments fail.

### (4) Fraud, Dishonesty or Bias

Plaintiff argues that "[t]he award is the result of fraud, dishonesty or bias" because (1) "the entire arbitration process governed by the American Arbitration Association was designed to defraud an unsuspecting claimant like [Plaintiff], and was filed with dishonesty, due to the nondisclosure of a $10,000 sponsorship fee and annual $6,000 renewal fees Lanier pays AAA" and (2) "the entire arbitration process and the arbitrator were biased and favored the corporate giant Lanier, as the arbitration was designed to do." (Doc. No. 3, at 26.)

While not so stated by Plaintiff, the court presumes that Plaintiff is proceeding under 9 U.S.C. § 10(a)(1) and (2). These two sections permit a court to vacate an arbitration award "(1) [w]here the award was procured by corruption, fraud, or undue means" and (2) "[w]here there was evidence partiality or corruption in the arbitrators, or either of them." 9 U.S.C. §. 10(a)(1) and (2).

Pursuant to 9 U.S.C. § 10(a)(1), "[f]or an alleged fraud ... to constitute grounds for vacatur, (i) the movant must establish the existence of fraud by clear and convincing evidence, (ii) the fraud must not have been discoverable upon the exercise of due diligence prior to or during the arbitration, and (iii) the movant must demonstrate that the fraud materially related to an issue in the arbitration". *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lambros,* 1 F.Supp.2d 1337, 1345 (M.D.Fla.1998), *aff'd,* 214 F.3d 1354 (11th Cir.2000) (citing *Bonar v. Dean Witter Reynolds, Inc.,* 835 F.2d 1378, 1383 (11th Cir.1988)). Pursuant to 9 U.S.C. § 10(a)(2), in turn, the Eleventh Circuit recently stated that "the law of [this] Circuit, ... is that an arbitration award may be vacated due to the 'evident partiality' of an arbitrator only when either (1) an actual conflict exists, or (2) the arbitrator knows of, but fails to disclose, information which would lead a reasonable person to believe that a potential conflict exists." *Gianelli Money Purchase Plan & Trust v. ADM Investor Services, Inc.,* 146 F.3d 1309, 1312 (11th Cir.1998). The Eleventh Circuit in *Lifecare Intern., Inc. v. CD Medical, Inc.,* further explained the standard for overturning an arbitrator's decision on the basis of bias as follows:

> In order to vacate on the ground of evident partiality in a nondisclosure case, the party challenging the arbitra-

---

11. Additionally, the court notes that, in general terms, there is no public policy that says federal statutory rights, such as Title VII and § 1981, cannot be the subject of arbitration. *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). In *Gilmer,* the Supreme Court of the United States concluded that "statutory claims may be the subject of an arbitration agreement, enforceable under the FAA." *Id.* at 26, 111 S.Ct. 1647. The Supreme Court explained that, " '[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.' " *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)).

tion award must establish that the undisclosed facts create a "reasonable impression of partiality." *Middlesex Mut. Ins. Co. v. Levine,* 675 F.2d 1197, 1201 (11th Cir.1982); *Schmitz v. Zilveti,* 20 F.3d 1043, 1046 (9th Cir.1994). This Court has reasoned that the alleged partiality must be "direct, definite and capable of demonstration rather than remote, uncertain and speculative." *Levine,* 675 F.2d at 1201; *accord, Consol. Coal v. Local 1643, United Mine Workers,* 48 F.3d 125, 129 (4th Cir.1995); *Health Services Management Corp. v. Hughes,* 975 F.2d 1253, 1264 (7th Cir. 1992). Accordingly, the mere appearance of bias or partiality is not enough to set aside an arbitration award. *Consol, Coal,* 48 F.3d at 129; *Health Services Management Corp.,* 975 F.2d at 1264; *Florasynth, Inc. v. Pickholz,* 750 F.2d 171, 173 (2nd Cir.1984); *see Schmitz,* 20 F.3d at 1046–47 (rejecting "appearance of bias" standard).

68 F.3d 429, 435 (11th Cir.1995).

■ The court finds that Plaintiff's arguments of fraud and bias are specious, at best, and that these arguments warrant little discussion, if any. Plaintiff, in his Affidavit, states his belief that Lanier "paid a substantial $10,000 sponsorship fee to and annual renewal fees of $6,0000 [sic]" to the American Arbitration Association. (Pl.'s Aff. ¶ 5.) Thus, as stated, Plaintiff asserts that the arbitrator had a financial interest in the outcome of the arbitration proceedings, which rendered the award the result of fraud and bias.[12] (Doc. No. 3 at 26.) No matter the amount of the membership fee paid by Lanier, Plaintiff has failed to demonstrate how Lanier's fee affected the arbitrator in this case. There is no evidence that the fee is paid to the arbitrator or that the arbitrator's judgment in any way was affected by Lanier's membership fee to the American Arbitra-

tion Association. Plaintiff has failed to demonstrate how the arbitrator committed fraud or why the arbitrator would even know, or have a reason to disclose, a membership fee paid not to him, but to the American Arbitration Association.

In short, the court finds that Plaintiff has not satisfied any of the criteria for showing fraud or "evident partiality." Plaintiff's arguments that the membership fee paid by Lanier to the American Arbitration Association resulted in a biased and fraudulent decision by the arbitrator "amount to precisely the vague, remote, and speculative charges that ... cannot support an order to vacate an arbitration award." *Scott,* 141 F.3d at 1015. Accordingly, the court finds that there is no basis to vacate the arbitrator's award on the grounds of fraud or "evident partiality," as set forth in 9 U.S.C. § 10(a)(1) and (2).

## IV. ORDER

For the foregoing reasons, it is CONSIDERED and ORDERED as follows:

(1) Plaintiff's Motion To Vacate The Arbitration Award Or, In The Alternative, Motion For De Novo Review (Doc. No. 2), filed September 30, 1997, be and the same is hereby DENIED;

(2) Defendants Lanier Worldwide, Inc., Peter Brandsma and Don Deweese's Cross–Motion For Summary Judgment And Motion To Confirm Arbitration Award (Doc. No. 15), filed November 19, 1997, be and the same are hereby GRANTED.

A judgment in accordance with this Memorandum Opinion And Order shall be entered separately.

---

12. The court notes that Lanier states that it pays a $2,500 annual membership fee to the American Arbitration Association. (Doc. No. 15, at 27, Paul Nix's Aff. ¶ 6.) Defendants further emphasize that the American Arbitration Association "is a nonprofit corporation

that depends on member contributions to sustain itself and continue its goals of educating the public about the practice and potential of alternative dispute resolution and administering (not deciding) arbitrations on behalf of private litigants...." (Doc. No. 15, at 27.)